# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

No. 14-0603

**FILED**

**June 16, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Respondent Below, Respondent

v.

ORVILLE M. HUTTON,
Petitioner Below, Petitioner

---

Appeal from the Circuit Court of Harrison County
Honorable James A. Matish, Judge
Civil Action No. 13-P-119-3

**REVERSED AND REMANDED**

---

Submitted:  April 22, 2015
Filed:  June 16, 2015

Valena Beety, Esq.
Michael Blumenthal, Esq.
Nicole Annan, Law Student
Courtney Hooper, Law Student
Martin McKeen, Law Student
Devon Unger, Law Student
West Virginia University College of
Law Clinical Law Program
Morgantown, West Virginia
Attorneys for Petitioner

Patrick Morrisey, Esq.
Attorney General
Elbert Lin, Esq.
Solicitor General
J. Zak Ritchie, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent

**JUSTICE DAVIS delivered the Opinion of the Court.**

**JUSTICE BENJAMIN** dissents and reserves the right to file a dissenting opinion.

**JUSTICE LOUGHRY** concurs in part, dissents in part, and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1. "A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." Syllabus point 5, *State v. Snyder*, 64 W. Va. 659, 63 S.E. 385 (1908).

2. "When a statute which is declaratory of the common law is repealed the common law remains in force for the reason that the statute was an affirmance of the common law." Syllabus point 2, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

3. In West Virginia, the common law writ of error coram nobis is available only in criminal proceedings.

4. Under *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), the Sixth Amendment requires defense counsel to warn an immigrant client of

the deportation consequences of a guilty plea. When the deportation consequence is succinct, clear, and explicit under the applicable law, counsel must provide correct advice to the client. When the law is not succinct or straightforward, counsel is required only to advise the client that the criminal charges may carry a risk of adverse immigration consequences.

5.     A claim of legal error may be brought in a petition for a writ of error coram nobis only in extraordinary circumstances and if the petitioner shows that (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) there exists a substantial adverse consequence from the conviction; and (4) the error presents a denial of a fundamental constitutional right.

**Davis, Justice:**

This is an appeal by Orville M. Hutton from an order of the Circuit Court of Harrison County that denied his petition for a writ of error coram nobis. Mr. Hutton sought the writ in order to have his guilty plea conviction for unlawful assault vacated on the grounds of ineffective assistance of counsel. Mr. Hutton alleged that his trial counsel was ineffective in failing to inform him that his guilty plea could result in his being deported. The circuit court denied the writ based upon the following grounds: (1) the Legislature's repeal of the coram nobis motion statute abolished coram nobis as a remedy in West Virginia; (2) even if coram nobis exists in West Virginia, a claim of ineffective assistance of counsel is not a recognized ground for relief under the writ; and (3) even if a claim of ineffective assistance of counsel could be remedied under the writ, the evidence failed to show Mr. Hutton's counsel did not inform him of the deportation consequences of his guilty plea. After a careful review of the briefs and the record submitted on appeal, and listening to the argument of the parties, we reverse and remand for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Hutton was born in Jamaica in 1962. He came to the United States in 1971, at the age of nine. Mr. Hutton has resided in this country since that time. He is

classified as a permanent resident of this country, but he is not an American citizen. In the

January 2010 term of court, a Harrison County grand jury indicted Mr. Hutton for malicious

assault and three counts of sexual assault in the second degree. The victim of the crimes was

Mr. Hutton's live-in girlfriend and mother of their then-four-year-old son.

On May 21, 2010, Mr. Hutton appeared in circuit court and entered an *Alford*

plea of guilty[1] to the crime of unlawful assault, a lesser-included offense of malicious assault.

As a result of the plea, the remaining sexual assault charges were dismissed. On July 6,

2010, the circuit court sentenced Mr. Hutton to prison for a term of one to five years. On

May 15, 2013, ten days before Mr. Hutton was supposed to be released from prison,[2] he was

notified by the Department of Homeland Security that he would be held by the federal

government under a detainer and processed for deportation to Jamaica because of his felony

conviction.

On May 25, 2013, Mr. Hutton was discharged from his sentence and turned

---

[1]An *Alford* plea, from the decision in *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), allows a defendant to enter a guilty plea without admitting guilt. *See* Syl. pt. 1, *Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43 (1987) ("An accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him.").

[2]Mr. Hutton had been released earlier on parole. However, his parole was revoked, and he served the full term of his sentence.

over to the federal government for deportation proceedings. While those proceedings were pending, Mr. Hutton filed a pro se petition for a writ of error coram nobis on September 4, 2013, with the circuit court that sentenced him. In that petition, Mr. Hutton alleged that his Sixth Amendment right to effective assistance of counsel had been violated because his trial counsel failed to inform him that his guilty plea could result in his being deported from the United States. Mr. Hutton requested the appointment of counsel for the coram nobis proceeding. However, at a scheduled April 9, 2014, evidentiary hearing, Mr. Hutton was told that if he insisted on having counsel appointed, it would delay the proceeding because counsel would need time to prepare and adequately represent him. It appears that Mr. Hutton was concerned about being deported before another hearing could be rescheduled, so he agreed to hold the hearing without counsel.

Mr. Hutton testified by telephone at the hearing and submitted into evidence an affidavit from his trial counsel. In the affidavit, trial counsel indicated that he did not remember speaking with Mr. Hutton regarding his immigration status nor the consequences he faced as an immigrant if he was found guilty of the charges in the indictment. Mr. Hutton also had his sister and wife testify as witnesses by telephone. A final witness that Mr. Hutton wanted to call, his post-conviction counsel Courtenay Craig, was not available. Consequently, the circuit court continued the hearing until the next day. On that date, Mr. Craig testified by telephone on behalf of Mr. Hutton. At the end of Mr. Hutton's

3

presentation of his evidence, the circuit court entered an amended order on April 28, 2014,[3]

denying him relief.[4]  This appeal followed.[5]

## II.

## STANDARD OF REVIEW

In this proceeding, we are called upon to review the circuit court's order

denying Mr. Hutton coram nobis relief.  In reviewing challenges to the findings and

conclusions of the circuit court, we apply the following standard of review:

> "We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review."

*State v. Allen*, 208 W. Va. 144, 150, 539 S.E.2d 87, 93 (1999) (quoting Syl. pt. 2, *Walker v.*

*West Virginia Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997)).

## III.

## DISCUSSION

The circuit court made three dispositive rulings in denying Mr. Hutton relief.

---

[3]The original order was entered on April 21, 2014.

[4]The state and federal government opposed relief for Mr. Hutton; but neither appears to have called any witnesses at the proceeding.

[5]Mr. Hutton is represented by counsel in this appeal.

The court determined that the writ of error coram nobis did not exist in West Virginia; a claim of ineffective assistance of counsel is not a recognized ground for relief under the writ; and Mr. Hutton failed to show that his counsel did not inform him of the deportation consequences of his guilty plea. We will address each dispositive issue separately. However, before we begin our analysis, we first will provide an overview of the origins and scope of the writ of error coram nobis.

### A.  *Overview of the Writ of Error Coram Nobis*

The common law method for a trial court to review a final judgment was through the writ of error coram nobis.[6]  The writ "originated in sixteenth-century England as an instrument used by trial courts to correct their own fact-based errors."  *Trenkler v. United States*, 536 F.3d 85, 92-93 (1st Cir. 2008).  As such, the original purpose of the writ

---

[6]There also was another, similar writ that was called the writ of coram vobis. The distinction between the two writs involved the courts in which they were filed.

> It was called *coram nobis* (before us) in King's Bench because the king was supposed to preside in person in that court.  It was called *coram vobis* (before you – the king's justices) in Common Pleas, where the king was not supposed to reside.

*Neighbors v. Commonwealth*, 274 Va. 503, 508, 650 S.E.2d 514, 516 (2007).  *See Pyles v. Boles*, 250 F. Supp. 285, 287 n.1 (N.D. W. Va. 1966) ("[T]he only difference between coram nobis and coram vobis stems from the forum in which they are brought.").  Insofar as the United States is a democracy and not a monarchy, "American courts entertaining petitions in the nature of coram nobis or coram vobis have 'indiscriminately' invoked both labels." *Rawlins v. Kansas*, 714 F.3d 1189, 1194 (10th Cir. 2013) (citation omitted).

"was to promote respect for the judicial process by enabling a court to correct technical errors in a final judgment previously rendered." *United States v. George*, 676 F.3d 249, 253 (1st Cir. 2012). *See Warden, Nevada State Prison v. Peters*, 83 Nev. 298, 305, 429 P.2d 549, 553 (1967) ("Its purpose is to correct an alleged error of fact not appearing in the record where there is no other remedy available."). Prior to the development of the writ, trial courts lacked the authority to correct their own errors. *See United States v. Sawyer*, 239 F.3d 31, 37 (1st Cir. 2001). This situation has been described as follows:

> The writ . . . was originally devised in England as a means of rectifying the unjust situation arising from the fact that any allowable method of appeal at common law was limited only to review for errors of law and there was no redress for an error of fact not apparent on the record and unknown to the court at the time of trial, which would have brought about a different result. Like all writs in those days, it issued out of Chancery and was addressed to the court in which the judgment had been entered, imploring that tribunal to recognize the error and correct the judgment. Later it was obtained by motion to the trial court itself.

*Janiec v. McCorkle*, 52 N.J. Super. 1, 13-14, 144 A.2d 561, 568 (1958). *See People v. Kendricks*, 75 N.Y.S.2d 216, 218 (1947) ("Since a review by Parliament and the Exchequer was restricted exclusively to errors of law, it was essential to devise some means of correcting the occasional injustice resulting from errors of fact being committed in the Court of Kings Bench."). Further, "the writ of error *coram nobis* (or *vobis*) contemplates a review of the judgment by the court which rendered it, not by an appellate court; and no writ issues from an appellate court." Leo Carlin, *Correction of Error on Motion*, 55 W. Va. L. Rev. 1,

6

6 (1952).

The scope of the writ of error coram nobis was extremely narrow. *See People v. Goodspeed*, 35 Cal. Rptr. 743, 749 (1963). The writ could not be used to permit a new examination of questions previously determined; nor could it be used as an alternative for direct appeal or habeas corpus. *See State v. Davis*, 515 N.W.2d 205, 208 (S.D. 1994). It was "limited to correct or vacate a judgment upon facts or grounds, not appearing on the face of the record and not available by appeal or otherwise, which were discovered after the rendition of the judgment without fault of the party seeking relief." *Harris v. Commonwealth*, 296 S.W.2d 700, 701 (Ky. 1956). The writ "reaches only matters of fact unknown to the applicant at the time of judgment, not discoverable through reasonable diligence, and which are of a nature that, if known by the court, would have prevented entry of judgment." *State v. Diaz*, 283 Neb. 414, 420, 808 N.W.2d 891, 896 (2012). Historically, the writ "did not require a claim that the movant was currently being unlawfully detained." Steven J. Mulroy, *The Safety Net: Applying Coram Nobis Law to Prevent the Execution of the Innocent*, 11 Va. J. Soc. Pol'y & L. 1, 10 (2003). It also has been observed that, "[t]hough more frequently employed in civil cases, coram nobis relief was available in criminal proceedings under the common law." Louis J. Palmer, Jr., *The Death Penalty in the United States: A Complete Guide to Federal and State Laws* 198 (2d ed. 2014). In commenting upon the limited scope of coram nobis, Professor Cleckley made the following

7

observations:

> *Coram nobis* is of limited scope and is sometimes the proper vehicle for vindicating constitutional rights. . . . Theoretically, *coram nobis*, not being dependent upon custody, is available indefinitely[.]

Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* 508 (2d ed. 1993).[7]

It also has been observed that "the hearing of a *coram nobis* petition is in the nature of a civil proceeding and that a petitioner need not be physically present in court at the hearing." *People v. Lauderdale*, 228 Cal. App. 2d 622, 626, 39 Cal. Rptr. 688, 691 (1964) (citations omitted). "Any proceeding which is challenged by the writ is presumed to be correct and the burden rests on its assailant to show otherwise." *United States v. Cariola*, 323 F.2d 180, 184 (3d Cir. 1963). A few examples of the types of factual errors that were reviewed through the writ

> include clerical errors, the infancy of the defendant and nonrepresentation by a guardian, the common-law disability of coverture (the married woman's disability to appear on her own in court), the death of a party before the verdict, the insanity of the defendant at the time of trial, a guilty plea procured by extrinsic fraud, and a valid defense that was not made because

---

[7]Professor Cleckley also suggested that the writ "cannot . . . be used unless the applicant for the writ is physically present in the state where he seeks relief, although there is no requirement that he be in custody." Cleckley, *Handbook*, at 508. We have not been able to find any judicial support for Professor Cleckley's assertion that a coram nobis petitioner must be present in the State. We have, however, found contrary authority. *See State v. Urbano*, 105 Ariz. 13, 14, 457 P.2d 343, 344 (1969) ("On April 4, 1967 the defendant filed in the Superior Court of Maricopa County [Arizona] a petition for a writ of error coram nobis. At the time of the filing of the petition, the defendant was confined in the New Jersey State Prison under a sentence of life imprisonment upon a charge of homicide.").

8

of fraud, duress, or excusable neglect.

*Trujillo v. State*, 310 P.3d 594, 597 (Nev. 2013).  Finally, it has been said that the writ "exists

to afford a remedy against injustice–when no other remedy is available."  *Petition of*

*Brockmueller*, 374 N.W.2d 135, 139 (S.D. 1985) (Henderson, J., concurring)

### B.  *The Status of the Writ of Error Coram Nobis in West Virginia*

Mr. Hutton contends that the circuit court committed error in concluding that

the writ of error coram nobis was abolished in West Virginia through the Legislature's repeal

of the coram nobis motion statute.  The circuit court reached that conclusion, in part, based

upon West Virginia's adoption of a Virginia statute that incorporated the writ.  The Virginia

statute in question was found in chapter 181, § 1 of the Virginia Code of 1849.  The

following pronouncement regarding the writ of error coram nobis was set out under the

Virginia statute:

> For any clerical error, or error in fact for which a
> judgment or decree may be reversed or corrected on writ of error
> *coram nobis*, the same may be reversed or corrected, on motion
> after reasonable notice, by the court, or if the judgment or decree
> be in a circuit court, by the judge thereof in vacation.[8]

(Footnote added).  The Virginia statute was adopted almost verbatim by the West Virginia

---

[8]*See* Va. Code Ann. § 8.01-677 (1977).  The Virginia statute now uses the phrase coram vobis instead of coram nobis.  *See Draghia v. Commonwealth*, 54 Va. App. 291, 293 n.2, 678 S.E.2d 272, 273 n.2 (2009) ("The terms 'coram vobis' and 'coram nobis' are interchangeable.").

Legislature in chapter 134, § 1 of the State Code of 1868.  The West Virginia statute provided the following:

> For any clerical error or error in fact for which a judgment or decree may be reversed or corrected on writ of error coram nobis, the same may be reversed or corrected, on motion after reasonable notice, by the court, or by the judge thereof in vacation.[9]

The circuit court and the State take the position that when Virginia enacted its coram nobis motion statute, it effectively abolished the common law writ.  Moreover, it is argued that because West Virginia adopted Virginia's coram nobis motion statute, the common law writ was necessarily abolished in West Virginia.  Finally, the circuit court and State contend that, insofar as the West Virginia Legislature repealed the coram nobis motion statute in 1998, the writ is abolished in West Virginia.  We disagree with these contentions and will address each separately, below.

As a preliminary matter, our analysis requires us to review statutes.  We previously have held that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."  Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W. Va. 108, 219 S.E.2d 361 (1975).  In examining statutory language generally, words

---

[9]West Virginia's coram nobis motion statute was subsequently codified at W. Va. Code § 58-2-3 (1923) (repealed).

are given their common usage, and "[c]ourts are not free to read into the language what is not there, but rather should apply the statute as written." *State ex rel. Frazier v. Meadows,* 193 W. Va. 20, 24, 454 S.E.2d 65, 69 (1994). We further have held that "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars,* 144 W. Va. 137, 107 S.E.2d 353 (1959). "One of the axioms of statutory construction is that a statute will be read in context with the common law unless it clearly appears from the statute that the purpose of the statute was to change the common law." Syl. pt. 2, *Smith v. West Virginia State Bd. of Educ.*, 170 W. Va. 593, 295 S.E.2d 680 (1982). Finally, we are guided by the general process and principles of statutory construction embodied in Syllabus point 5 of *State v. Snyder*, 64 W. Va. 659, 63 S.E. 385 (1908):

> A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

**1. The impact of Virginia's coram nobis motion statute on the common law writ of error coram nobis.** This Court has recognized that "[b]y an ordinance of the

Virginia convention all of English common law was incorporated in Virginia in 1776[.]" *State ex rel. Knight v. Public Serv. Comm'n*, 161 W. Va. 447, 456 n.4, 245 S.E.2d 144, 149 n.4 (1978).  Moreover, "to date the incorporation of the common law remains in force and effect in Virginia to the extent it has not been modified by legislative action[.]"  *Id*.  Our research into Virginia's use of the writ of error coram nobis prior to the adoption of its coram nobis motion statute informs us that Virginia did not "abolish" the common law writ through enactment of the statute.

Prior to 1849, when Virginia's coram nobis motion statute was enacted, Virginia recognized two ways in which a litigant could approach a trial court to challenge a final judgment.  This could be done "by motion or writ of error *coram nobis*."  *Eubank v. Ralls' Ex'r*, 31 Va. 308, 321 (1833).  The first Virginia case to recognize that a motion could be used to achieve the result of the writ of error coram nobis was the 1795 decision in *Gordon v. Frazier*, 2 Va. 130 (1795).  In *Gordon*, the use of a motion to have a trial court revisit a final judgment was the general practice at that time, even though the writ of error coram nobis was available for the same purpose.  It appears that the reason litigants used a motion to challenge a judgment, instead of the writ, was because filing a motion was less expensive than instituting a new proceeding by filing a petition for a writ.  *Gordon* summarized this matter as follows:

> This case tho' depending upon a practice not common in
> this country is by no means a difficult one.  I have no doubt but

12

that the error complained of might have been corrected by the same court upon motion, at a subsequent term; but I should not for that reason reverse the judgment, since the party having preferred a writ of error *coram vobis* had a right to proceed in that way, tho' a shorter, and much less expensive mode might have been pursued.

*Gordon*, 2 Va. at 134. *See State v. Sinclair*, 191 Vt. 489, 492, 49 A.3d 152, 154 (2012) ("While coram nobis was originally sought by initiating a new proceeding through a writ, in the United States 'proceeding by motion is the modern substitute.'" (quoting *United States v. Mayer*, 235 U.S. 55, 67, 35 S. Ct. 16, 19, 59 L. Ed. 129 (1914))). What is important to understand from *Gordon* is that, prior to 1849, the trial courts of Virginia allowed litigants to challenge a final judgment by a motion or by filing a petition for the common law writ of error coram nobis. This point was noted in *Bent v. Patten*, 22 Va. 25, 25-26 (1821), which said that "[t]he only question to be considered is, whether such error is merely clerical, and therefore capable of correction by motion, or by writ of error *coram vobis*; or whether it is a judicial error, which can be corrected only by appeal." *See Fawkes v. Davison*, 35 Va. 554, 560 (1837) ("So too the motion with us has superseded in practice the writ of error *coram nobis*." (citation omitted)); *Garland v. Marx*, 31 Va. 321, 323 (1832) ("[U]pon the attempt of the plaintiff to enforce this judgement, a cause of action would at once arise on the part of the defendants, to correct any error in it by the ordinary means of a motion or writ of error *coram nobis*."); *Watts v. Cole*, 29 Va. 653, 658 (1830) ("At all events, the writ of error *coram nobis* was his proper remedy; for the error complained of is, in its very nature, an error in fact; and if he had resorted to that remedy, and assigned his infancy as error, it might have

13

been pleaded that he attained to full age pending the suit."); *Smock v. Dade*, 26 Va. 639, 641 (1826) ("He referred to *Gordon v. Frazer*, 2 Wash. 130, to shew that the *motion* had substituted the Writ of Error *Coram Vobis*."); *Hite's Heirs v. Wilson*, 12 Va. 268, 282 (1808) ("The remedy is by writ of error *coram nobis*, not by *supersedeas*[.]"); *Wingfield v. Crenshaw*, 13 Va. 245, 249 (1808) ("Suppose the plaintiff be dead before judgment; or any other error *in fact* shall have occurred; will it be said that a writ of error *coram nobis*, will not lie?"); *Cooper v. Saunders*, 11 Va. 413, 415 (1807) ("It is true, that *as a judicial tribunal*, a County Court, at a subsequent term, cannot rescind its own order, except by a writ of error *coram nobis*[.]"); *Williamson v. Appleberry*, 11 Va. 206, 206 (Va. Super. Ch. 1807) ("An injunction ought not to be granted on the ground that the plaintiff at law was dead before the judgment was obtained in his name.  But this error should be rectified by a writ of *error coram nobis*.").

It is with this legal background in view that we must discern the impact of Virginia's coram nobis motion statute on the common law writ in Virginia.  A review of the text of the statute reveals that it was not intended to abolish the common law writ–it simply intended to codify the practice that was taking place since at least 1795, *i.e.*, allowing the substance of the writ to be brought as a post-judgment motion.  There is no language in the statute which expressly or implicitly indicates that it was intended to abolish the common law writ.  Moreover, the statute made it discretionary to use a motion to raise a coram nobis issue.

14

The statute provided that if a final judgment could be corrected with a writ of error coram nobis, it "may" be corrected on a motion. Further, the original title of the statute supports the discretionary use of a motion, as it provides: "Errors which might be corrected on writ of error *coram nobis*, may be corrected on motion after notice."[10] *See Chesapeake & Ohio Ry. Co. v. Pulliam*, 185 Va. 908, 916, 41 S.E.2d 54, 58 (1947) ("The word 'may' is prima facie permissive, importing discretion."); *Ndiaye v. Foust*, 73 Va. Cir. 408 (2007) ("A close reading of the statutory language reveals that the word 'may' makes this statute permissive, not mandatory."). In other words, the motion could be used as a substitute for the writ. *See Commonwealth v. Phelps*, 6 Va. Cir. 538, at *1 (1978) ("In Virginia by statute a proceeding by motion to correct any *clerical error* or *error in fact* for which a judgment may be reversed or corrected may be substituted for the common law writ of error coram vobis." (citation omitted)). *See also Richardson's Ex'r v. Jones*, 53 Va. 53, 56 (1855) ("[T]his was a matter not to be put in issue upon a writ of error *coram nobis* or the motion substituted in its place.").

Even the current version of Virginia's coram nobis motion statute has been interpreted as allowing a motion to act as a substitute for the writ. It was observed in *Blowe v. Peyton*, 208 Va. 68, 74, 155 S.E.2d 351, 356 (1967), that "[t]he courts are now frequently

---

[10]The title of Virginia's current version of the coram nobis motion statute reads: "Errors corrected on motion instead of writ of error coram vobis."

called upon to deal with petitions or motions for writs of error *coram vobis* on the basis of the lack of availability of *habeas corpus* under the facts and circumstances of the particular case." A review of the cases under the current statute reveals that litigants are continuing to file motions under the statute or petitions. For cases using a motion, see *Thomas v. Garraghty*, 258 Va. 530, 532 n.1, 522 S.E.2d 865, 866 n.1 (1999) ("Thomas raised the same claim in a motion for writ of coram vobis filed in the circuit court, which denied the motion by order dated June 16, 1999."); *Dobie v. Commonwealth*, 198 Va. 762, 765, 96 S.E.2d 747, 749 (1957) ("[T]he defendant filed in the trial court a written motion in the nature of a petition for a writ of error *coram vobis*[.]"); *Draghia v. Commonwealth*, 54 Va. App. 291, 293, 678 S.E.2d 272, 273 (2009) (motion filed); *Commonwealth v. Mohamed*, 71 Va. Cir. 383 (2006) (motion). For cases using a common law petition, see *E.C. v. Virginia Dep't of Juvenile Justice*, 88 Va. Cir. 49, *8 (2014) ("On July 11, 2008, E.C. filed a petition for a writ of error coram nobis, which was denied by the juvenile court on July 23, 2008, and by the circuit court on September 19, 2008."); *Sylvain v. Commonwealth*, 85 Va. Cir. 400, *1 (2012) ("The Petitioner filed a 'Petition for a Writ of Error *Coram Nobis*' seeking to have this court enter an order vacating the Petitioner's guilty pleas from January 21, 2003."); *Commonwealth v. Mubarak*, 68 Va. Cir. 422, *1 (2005) ("This matter came before me on the Defendant's Verified Petition for Writ of Error Coram Nobis.").

The circuit court and the State have noted that the courts of Virginia have

concluded that coram nobis has been limited by the statute to clerical error or error in fact. *See Neighbors v. Commonwealth*, 274 Va. 503, 508, 650 S.E.2d 514, 517 (2007) ("As a common law writ, coram vobis has been substantially limited by the General Assembly through Code § 8.01-677."). We do not find this to be a persuasive argument for showing that the statute abolished the common law writ. Although Virginia decisions do in fact provide that the statute limits coram nobis to clerical error or error of fact, this limitation is consistent with the narrow common law scope of the writ. *See May v. State Bank of North Carolina*, 41 Va. 56, 68 (1843) ("If the death appears upon the face of the record, it is error in law; if it does not so appear, it is error in fact: and in either case the judgment may be reversed by writ of error; in the former, by a writ of error in an appellate court; in the latter, by a writ of error *coram vobis* in the same court."); *Eubank v. Ralls' Ex'r*, 31 Va. 308, 313 (1833) ("The next question was, whether supposing the judgements wrong in giving the back interest, it was an error of the court . . . which the same court might properly correct, on motion or writ of error *coram nobis*?"); *Watts v. Cole*, 29 Va. 653, 658 (1830) ("At all events, the writ of error *coram nobis* was his proper remedy; for the error complained of is, in its very nature, an error in fact."). Moreover, it appears that when decisions by Virginia courts speak of the statute limiting coram nobis, they are usually addressing matters for which the common law writ did not apply to begin with. *See Commonwealth v. Mohamed*, 71 Va. Cir. 383, *3 (2006) ("[T]he Court has made clear that the writ has a limited availability, as it does not supplant the writ of *habeas corpus* or other existing statutory

17

remedies.").

In sum, we reject the position of the circuit court and the State that when Virginia enacted its coram nobis motion statute, it effectively abolished the common law writ of error coram nobis.[11]

**2. West Virginia's adoption of Virginia's coram nobis motion statute did not abolish the common law writ of error coram nobis.** The circuit court's order provides that insofar as West Virginia adopted Virginia's coram nobis motion statute, the common law writ "did not continue in force in West Virginia." The State also has argued that, as a result of the statute, "the writ of *coram nobis* has never been a part of that common law." The State premises its argument on article XI, § 8 of the West Virginia Constitution of 1863. A provision in § 8 provides the following:

> Such parts of the common law and the laws of the State of Virginia as are in force within the boundaries of the State of West Virginia, when this Constitution goes into operation, and are not repugnant thereto, shall be and continue the law of this State until altered or repealed by the Legislature.

According to the State, as a result of this constitutional provision, "instead of adopting the

---

[11]We also should note that even if we had determined that Virginia abolished the common law writ of error coram nobis, such a determination would not have impacted our ultimate conclusion that the writ exists as a common law remedy in West Virginia. This is because, as will been seen in the next section, historically, this Court has always recognized that the common law writ existed in this State.

18

writ of *coram nobis* from Virginia as part of the common law, West Virginia adopted the statutory motion from Virginia." We disagree with the circuit court's ruling and the State's arguments.

> To begin, as we previously mentioned,
>
> the 1st section of chapter 134 of the Code of [1868] provides that for any clerical error, or error in fact, for which a judgment or decree may be reversed or corrected on writ of error *coram nobis*, the same may be reversed or corrected on motion, after reasonable notice by the court, or by the judge thereof in vacation.

*Campbell v. Hughes*, 12 W. Va. 183, 211 (1877). The first meaningful discussion of this statute by this Court occurred in *King v. Burdett*, 28 W. Va. 601 (1886). In *King*, the plaintiff sought to enforce a judgment against several defendants. The defendants objected to enforcement of the judgment because one of the defendants in the case had died before the judgment was rendered. The defendants contended that because one of the defendants had died before the judgment was returned, the judgment was void and could not be used as a lien against their property. It was determined by the lower court that the judgment was void because of the death of one of the defendants. The plaintiff appealed that determination. This Court held that the judgment was voidable, not void; therefore, it could be corrected. The opinion looked at cases to determine how the plaintiff might correct the problem in the court where the judgment was rendered. The opinion noted that it was said in *McClelland v. Moore*, 48 Tex. 355, 361 (1877), that "[r]elief must be sought in such case . . . by a motion

19

in the court in which it is rendered, to set aside the judgment; which seems to have been recognized by this court, in cases of this kind, as a substitute in modern practice for writ of error *coram nobis*." The opinion in *King* also cited to *Case v. Ribelin*, 24 Ky. 29, 30 (1829), wherein the court stated "[t]here must be some remedy for such a case; and there are numerous authorities, showing that a writ of error *coram vobis*, is the usual, and perhaps the only one." In view of the above authorities, the opinion in *King* determined that the case should be reversed, and the plaintiff given an opportunity to correct judgment before the trial court. The opinion reasoned as follows:

> We have seen, that the great weight of the authority is in favor of holding a judgment recovered against a deceased person not void but voidable. We think this doctrine [is] founded on the better reason. It is very easy for the personal representative upon motion under sec. 1 of ch. 134 of the Code to correct the error. *That section gives an additional remedy to a writ of error coram nobis*; it reads as follows: "For any clerical error or error in fact, for which a judgment or decree may be reversed or corrected on writ of error *coram nobis*, the same may be reversed or corrected on motion after reasonable notice by the court or by the judge thereof in vacation." It would result in great inconvenience and in many cases in gross injustice to regard such judgments absolute nullities.

*King*, 28 W. Va. at 609 (emphasis added). *See Watt v. Brookover*, 35 W. Va. 323, 325, 13 S.E. 1007, 1008 (1891) ("I am of opinion that, where the fact of death . . . does not appear in the record, but is to be shown *aliunde*, it is called error in fact, to be corrected at common law by writ of error *coram vobis*, and now, under our Code . . . by motion in lieu of that writ.").

20

The decisions in *King* and *Watt* suggest that this Court interpreted our coram nobis motion statute as providing a substitute for the writ through a motion. This suggestion was made explicit in *Withrow v. Smithson*, 37 W. Va. 757, 17 S.E. 316 (1893). The decision in *Withrow* addressed the issue of whether a judgment could be rendered against a defendant who was insane at the time of the judgment. This Court ultimately concluded that the evidence failed to show that the defendant was insane. However, in discussing how such a judgment could be challenged, if the defendant was insane, the opinion made the following observations about the writ of error coram nobis and the motion provided for by statute:

> The point is made that the application to equity is mistaken, and that it should have been to the court of law which pronounced the judgment, *by either writ of error coram nobis at common law*[,] *or by motion under section 1, c. 134, Code*. There was in no manner a suggestion of Smithson's insanity in the record of the judgment. . . . [I]f[,] at the date of the judgment[,] there exist a fact, which, had it been introduced into the record, ought to have prevented the judgment, but it was not introduced, it is a case of error in fact, *to be corrected by writ of error coram nobis, or by such motion.* Thus, if the defendant be dead, . . . but where the death is not presented, and judgment is rendered, that is error in fact, *to be corrected by writ of error coram nobis or motion.*

*Withrow*, 37 W. Va. 757, 758, 17 S.E. 316, 316 (1893) (emphasis added). On three occasions, the opinion in *Withrow* held that West Virginia recognized the common law writ of error coram nobis and its substitute by a motion under the statute. To reinforce this recognition, the opinion further held the following in Syllabus point 2:

> *A writ of error coram nobis, or a motion in lieu of it*, is not a proper process to reverse [a] judgment, because of the

21

defendant's insanity, as the judgment can only be affected in equity, which has jurisdiction in such case.

*Withrow*, 37 W. Va. 757, 17 S.E. 316. *See also* Syl. pt. 3, in part, *Curtis v. Deepwater Ry. Co.*, 68 W. Va. 762, 70 S.E. 776 (1911) ("[A] judgment against an infant defendant, not sued as such, and not defended by guardian ad litem, is not void, but is simply erroneous, reviewable, formerly by writ of error *coram nobis*, now by motion . . . ."); *Talbott v. Southern Oil Co.*, 60 W. Va. 423, 425, 55 S.E. 1009, 1010 (1906) ("If the matter relied upon were such as could have been made available at common law, upon a writ of error *coram nobis* for error in fact, relief might be had by motion, under section 1 of chapter 134 of the Code."); Syl. pt. 2, *Barbour Cnty. Court v. O'Neal*, 42 W. Va. 295, 26 S.E. 182 (1896) ("After the end of the term, the court has no power to modify or annul any final judgment or decree, except in certain causes, by writ of error *coram nobis* or motion, under chapter 134 of the Code."); Syl. pt. 3, *Stewart v. Stewart*, 40 W. Va. 65, 20 S.E. 862 (1894) ("In order that a decree may be corrected or reversed on motion under section 1 of chapter 134 of the Code, the error complained of must be a clerical error, or error in fact for which a judgment or decree may be reversed or corrected on motion or writ of error *coram nobis*."); *Morgan v. Ohio River R. Co.*, 39 W. Va. 17, 19, 19 S.E. 588, 589 (1894) ("But[,] after the term[,] the court has no power to modify or annul any final judgment or decree, except in law, cases for certain causes by writ of error *coram nobis* or motion, under chapter 134 of the Code.").

The prior decisions of this Court have made it abundantly clear that the

22

common law writ of error coram nobis was not abolished by the Legislature's adoption of Virginia's coram nobis motion statute. Therefore, we reject the circuit court's determination to the contrary.

**3. The Legislature's repeal of the coram nobis motion statute did not abolish the common law writ of error coram nobis.** The circuit court and State contend that insofar as the Legislature repealed the coram nobis motion statute in 1998, the common law writ is abolished in West Virginia. We disagree.

To understand the limited impact of the repeal of the coram nobis motion statute, it must be viewed in light of this Court's abolishment of the common law writ of error coram nobis in civil cases. Prior to the repeal of the coram nobis motion statute in 1998, this Court had abolished the writ of error coram nobis in civil cases pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure. *See* Franklin D. Cleckley, Robin Jean Davis, and Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure*, § 60(b), at 1294 (4th ed. 2012) ("Rule 60(b) expressly abolishes the use of writs of coram nobis and coram vobis . . . , as mechanisms for obtaining relief from a final judgment."). In 1960, this Court adopted the Rules of Civil Procedure. The following provision abolishing the writ of error coram nobis in civil cases was incorporated into Rule 60(b) when the Rules were adopted:

23

> Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

This provision in Rule 60(b) was taken from its counterpart in federal Rule 60(b). *See United States v. Kerschman*, 201 F.2d 682, 684 (7th Cir. 1953) ("But writs of error coram nobis were expressly abolished by Rule 60(b) of the Federal Rules of Civil Procedure."). This Court abolished the writ in civil cases because final judgments in civil cases could be attacked in circuit court by a motion using the factors listed under Rule 60(b). That is, "[t]he primary vehicle by which a party may seek relief from a final judgment or order in a circuit court is contained under the provisions of Rule 60(b)." Cleckley, Davis, and Palmer, *Litigation Handbook*, § 60(b), at 1294.[12]

---

[12]The relevant provision of Rule 60(b) provides as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

No provision equivalent to the relief mechanism of Rule 60(b) exists in the West Virginia Rules of Criminal Procedure. Consequently, the common law writ of error coram nobis in criminal cases was not affected by Rule 60(b). This Court previously has indicated that "in spite of the language in Rule 60(b) which abolishes the writ of error *coram nobis*, in criminal cases the writ of *coram nobis* . . . remains available whenever resort to a more usual remedy would be inappropriate." *State v. Eddie Tosh K*, 194 W. Va. 354, 363 n.10, 460 S.E.2d 489, 498 n.10 (1995) (internal quotations and citation omitted). *See Kemp v. State*, 203 W. Va. 1, 2 n.4, 506 S.E.2d 38, 39 n.4 (1997) ("Although we hold that the appellant cannot, at this time, petition for a writ of habeas corpus, he may be able to protect himself through a writ of error known as *coram nobis*. This particular writ has been used for post-conviction issues when the defendant is not incarcerated.").

When the Legislature repealed the coram nobis motion statute in 1998, the actual common law writ of error coram nobis was limited to criminal cases as a result of Rule 60(b). The circuit court and the State argue that repeal of the statute abolished the common law writ of error coram nobis in criminal cases.[13] Other than making this assertion, the circuit court and State have provided no evidence to support this contention.

---

[13]This actually is a disingenuous argument. Both the circuit court and the State have argued that the common law writ of error coram nobis was never part of the law in West Virginia, in part, because of the adoption of Virginia's coram nobis motion statute. If the common law writ never existed in West Virginia, then how could the repeal of the statute abolish that which purportedly never existed?

This Court has made clear that "[i]f the Legislature intends to alter or supersede the common law, it must do so clearly and without equivocation." *State ex rel. Van Nguyen v. Berger*, 199 W. Va. 71, 75, 483 S.E.2d 71, 75 (1996). "The common law is not to be construed as altered or changed by statute, unless legislative intent to do so be plainly manifested." Syl. pt. 4, *Seagraves v. Legg*, 147 W. Va. 331, 127 S.E.2d 605 (1962). Repeal of the coram nobis motion statute, without more, cannot be the basis for inferring the intent of the Legislature to abolish the common law writ. To abolish the common law writ, the Legislature had to affirmatively articulate such an intent.

Moreover, we have held that "[w]hen a statute which is declaratory of the common law is repealed the common law remains in force for the reason that the statute was an affirmance of the common law." Syl. pt. 2, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959). Thus, to the extent the coram nobis motion statute was an affirmance of the common law writ, its repeal left the common law writ intact with respect to its use in criminal cases. Indeed, after the coram nobis motion statute was repealed, this Court observed in passing that "*coram nobis . . .* may still be available in a post-conviction context when the petitioner is not incarcerated." *State ex rel. Richey v. Hill*, 216 W. Va. 155, 162 n.10, 603 S.E.2d 177, 184 n.10 (2004). *See also Cline v. Mirandy*, 234 W. Va. 427, ___, 765 S.E.2d 583, 591 (2014) (Ketchum, J., concurring) ("There may be occasions after a prisoner's release when newly discovered facts,

26

such as DNA, demonstrate the released prisoner's innocence. Under these circumstances, the released prisoner would still have a remedy under the writ of *coram nobis*.").

In sum, Rule 60(b) abolished the common law writ of error coram nobis in civil cases. The Legislature's repeal of the coram nobis motion statute merely abolished the use of a motion to raise a coram nobis issue in criminal cases. Consequently, and we so hold, in West Virginia, the common law writ of error coram nobis is available only in criminal proceedings.[14]

### C. Courts Permit a Constitutional Legal Error Claim to Be Brought under the Writ of Error Coram Nobis

Mr. Hutton contends that the circuit court committed error in finding that the writ of error coram nobis could not be used to raise a constitutional claim for ineffective assistance of counsel. The circuit court's order and the State's brief argue that the constitutional claim of ineffective assistance of counsel presents a mixed question of fact and law. Consequently, the claim cannot be raised in a petition for the writ of error coram nobis because the common law did not allow errors of law to be raised through the writ. Although we agree with the circuit court and State that the writ of error coram nobis was limited under

---

[14]It should be clearly understood that although a writ of error coram nobis proceeding is in the nature of a civil proceeding, the abolishment of the writ by Rule 60(b) does not prevent the initiation of a writ proceeding. Rule 60(b) would prevent only a final judgment in a writ proceeding from being challenged by use of another writ.

the common law to errors of fact, the modern trend has been to narrowly expand the writ to include limited legal errors involving constitutional deprivations. *See Grant v. State*, 2010 Ark. 286, *3, 365 S.W.3d 894, 896 (2010) ("We have held that a writ of error coram nobis was available to address certain errors that are found in one of four categories: insanity at the time of trial, a coerced guilty plea, material evidence withheld by the prosecutor, or a third-party confession to the crime during the time between conviction and appeal."); *Smith v. United States*, 20 A.3d 759, 763 (D.C. 2011) ("Furthermore, the writ of error *coram nobis* is an extraordinary remedy that can be used to correct a legal or factual error."); *Skok v. State*, 361 Md. 52, 77, 760 A.2d 647, 660 (2000) ("Along with the vast majority of appellate courts which have considered the matter, we believe that the [expanded] scope of coram nobis . . . is justified by contemporary conditions and public policy."); *Gilliard v. State*, 446 So. 2d 590, 591 (Miss. 1984) ("[T]here seems to be ample Mississippi precedent that the writ of error coram nobis is available to attack collaterally a judgment of conviction on federal constitutional grounds."); *People v. Poole*, 209 N.Y.S.2d 126, 127 (1960) ("The appellant was afforded a full hearing and he has failed to demonstrate any error or deprivation of a constitutional right entitling him to a writ of error coram nobis."); *State v. Sinclair*, 191 Vt. 489, 493, 49 A.3d 152, 155 (2012) ("[U]nder the modern-day formulation . . . coram nobis is broad enough to encompass not only errors of fact that affect the validity or regularity of legal proceedings, but also legal errors of a constitutional or fundamental proportion." (internal quotations and citation omitted)). *But see Trujillo v. State*, 310 P.3d 594, 601

28

(2013) ("We decline to . . . expand the writ beyond its common-law scope.") [15]

To begin, the circuit court's order held that "there is no constitutional or statutory basis to expand the writ." We disagree. This Court has made clear that we have authority to alter the common law. In *Morningstar v. Black & Decker Manufacturing Co.*, 162 W. Va. 857, 253 S.E.2d 666 (1979), we discussed the role of the English common law as precedent for this Court. We held in *Morningstar* that article VIII, § 13 of the state constitution and W. Va. Code § 2-1-1, which established the English common law as of 1863 as a part of our law, "were not intended to operate as a bar to this Court's evolution of common law principles, including its historic power to alter or amend the common law." *Morningstar*, 162 W. Va. at 874, 253 S.E.2d at 676. It was noted in *Markey v. Wachtel*, 164 W. Va. 45, 264 S.E.2d 437 (1979), that

> [w]e did not hold in *Morningstar* that we would ignore the English common law, but only that we are not required to accept it as forever binding us, to the point where we cannot make our own assessment of the reasonableness of an ancient common law rule in light of the present condition of our society.

*Markey*, 164 W. Va. at 58, 264 S.E.2d at 445. *See Mallet v. Pickens*, 206 W. Va. 145, 148, 522 S.E.2d 436, 439 (1999) ("Today we make our own assessment of the reasonableness of

---

[15]It has been observed that "[t]he writ of *coram nobis* is not available in a majority of states because those states have enacted uniform post-conviction acts that provide a streamlined, single remedy for obtaining relief from a judgment of conviction, and that remedy is available to petitioners who are no longer in custody." *Trujillo v. State*, 310 P.3d 594, 598 (2013).

the ancient common law distinction between licensees and invitees, and find that it does not comport with the present condition of our society.").

Having determined that this Court has authority to modify common law principles, we now will proceed to show why and how we will modify the common law writ of error coram nobis. We will do this in three parts: (1) modification of the writ of error coram nobis by the United States Supreme Court; (2) a defendant has a constitutional right to be informed of the possible deportation consequences of being convicted of a crime; and (3) creation of a four-part test for asserting a constitutional legal claim in a petition for a writ of error coram nobis.

**1. Modification of the writ of error coram nobis by the United States Supreme Court.** The seminal case recognizing the expansion of the writ of error coram nobis to include a constitutional claim of error was *United States v. Morgan*, 346 U.S. 502, 74 S. Ct. 247, 98 L. Ed. 248 (1954). In *Morgan*, the defendant pleaded guilty in 1939, in a federal court in New York, to charges involving the theft of mail and was given a four-year sentence, which he served. Thereafter, in 1950, the defendant was convicted of an offense by a state court in New York and sentenced to a longer term, ten years, as a second offender because of the prior federal conviction. The defendant filed an application for a writ of error coram nobis in federal court seeking to set aside his federal conviction, on the grounds that

he was denied the right to counsel when he pled guilty. The defendant wanted to have his federal conviction vacated so that he could be resentenced as a first-time offender to a lesser term of confinement on the New York charge. The case reached the United States Supreme Court. In *Morgan*, without much discussion, the Court held that "coram nobis included errors of the most fundamental character." *Morgan*, 346 U.S. at 512, 74 S. Ct. at 253, 98 L. Ed. 248. The opinion concluded that

> [w]here it cannot be deduced from the record whether counsel was properly waived, we think, no other remedy being then available and sound reasons existing for failure to seek appropriate earlier relief, this motion in the nature of the extraordinary writ of coram nobis must be heard by the federal trial court.

*Morgan*, 346 U.S. at 512, 74 S. Ct. at 253, 98 L. Ed. 248.

The decision in *United States v. Denedo*, 556 U.S. 904, 129 S. Ct. 2213, 173 L. Ed. 2d 1235 (2009), addressed the limitations of *Morgan*. The opinion held:

> Any rationale confining the writ to technical errors, however, has been superseded; for in its modern iteration *coram nobis* is broader than its common-law predecessor. This is confirmed by our opinion in *Morgan*. In that case we found that a writ of *coram nobis* can issue to redress a fundamental error, there a deprivation of counsel in violation of the Sixth Amendment, as opposed to mere technical errors. The potential universe of cases that range from technical errors to fundamental ones perhaps illustrates, in the case of *coram nobis*, the tendency of a principle to expand itself to the limit of its logic. To confine the use of *coram nobis* so that finality is not at risk in a great number of cases, we were careful in *Morgan* to limit the availability of the writ to "extraordinary" cases

31

presenting circumstances compelling its use to achieve justice.

*Denedo*, 556 U.S. at 911, 129 S. Ct. at 2220, 173 L. Ed. 2d 1235 (internal quotations and citations omitted).

**2. A defendant has a constitutional right to be informed of the possible deportation consequences of being convicted of a crime.** The right of a defendant to be informed of any immigration consequences before pleading guilty to a crime was elevated to a constitutional right by the United States Supreme Court in the case of *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).[16] In *Padilla*, the defendant was a native of Honduras, who had been a lawful permanent resident of the United States for more than forty years. In 2002, the defendant entered a plea agreement to drug charges pending against him in a Kentucky court. Prior to entering the plea, the defendant's attorney told him that he did not have to worry about immigration because he had been in the country for so long. The trial court accepted the plea and sentenced the defendant to five years imprisonment. While in prison, the defendant learned that he would be deported upon his release. The defendant filed a motion to withdraw his plea on the basis that he received ineffective assistance of counsel. The Kentucky Supreme Court held that the Sixth

---

[16]*See State v. Keith D.*, ___ W. Va. ___, ___ S.E.2d ___ (No. 13-1123 Apr. 9, 2015) (discussing *Padilla* in passing). *See generally* Eric Beckemeier, *The Surprise Appearance of Padilla v. Kentucky: Practical Implications for Criminal Defense Attorneys and Possibilities for Expansion*, 80 U. Mo. Kan. City L. Rev. 437 (2011).

Amendment did not protect a criminal defendant against erroneous advice about deportation. The United States Supreme Court granted certiorari "to decide whether, as a matter of federal law, Padilla's counsel had an obligation to advise him that the offense to which he was pleading guilty would result in his removal from this country." *Padilla*, 559 U.S. at 360, 130 S. Ct. at 1478, 176 L. Ed. 2d 284.

As an initial matter, the opinion in *Padilla* examined the evolution of federal immigration law. The opinion concluded its review by noting the following:

> These changes to our immigration law have dramatically raised the stakes of a noncitizen's criminal conviction. The importance of accurate legal advice for noncitizens accused of crimes has never been more important. These changes confirm our view that, as a matter of federal law, deportation is an integral part–indeed, sometimes the most important part–of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes.

*Padilla*, 559 U.S. at 364, 130 S. Ct. at 1480, 176 L. Ed. 2d 284. It was said in *Padilla* that because deportation was a severe penalty, advice regarding deportation is within the scope of the Sixth Amendment right to counsel and subject to an analysis under the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Padilla* analyzed the first prong, constitutional deficiency, as follows:

> The weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation.
>
> . . . .

33

In the instant case, the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction. Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute. . . . Instead, Padilla's counsel provided him false assurance that his conviction would not result in his removal from this country. This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect.

Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward, a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

Accepting his allegations as true, Padilla has sufficiently alleged constitutional deficiency to satisfy the first prong of *Strickland*.

*Padilla*, 559 U.S. at 367-69, 130 S. Ct. at 1482-83, 176 L. Ed. 2d 284. The opinion in

*Padilla* did not address the second prong of *Strickland*, prejudice, because it was not

addressed by the state courts. The opinion did note that "to obtain relief on this type of

claim, a petitioner must convince the court that a decision to reject the plea bargain would

have been rational under the circumstances." *Padilla*, 559 U.S. at 372, 130 S. Ct. at 1485,

34

176 L. Ed. 2d 284. In remanding the case for a determination of prejudice, the opinion concluded as follows:

> It is our responsibility under the Constitution to ensure that no criminal defendant–whether a citizen or not–is left to the mercies of incompetent counsel. To satisfy this responsibility, we now hold that counsel must inform her client whether his plea carries a risk of deportation. Our longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand no less.

*Padilla*, 559 U.S. at 374, 130 S. Ct. at 1486, 176 L. Ed. 2d 284.[17]

Justice Alito, joined by Chief Justice Roberts, wrote a concurring opinion in *Padilla*. Although Justice Alito joined in the judgment under the facts of the case, he suggested that the majority opinion may have gone too far in the standard it imposed on criminal attorneys to provide immigration advice. Justice Alito noted that "it may be hard, in some cases, for defense counsel even to determine whether a client is an alien." *Padilla*,

---

[17]Subsequent to the decision in *Padilla*, the Supreme Court held in *Chaidez v. United States*, ___ U.S. ___, 133 S. Ct. 1103, 185 L. Ed. 2d 149 (2013), that *Padilla* established a new rule for retroactivity purposes, and that defendants whose convictions became final prior to *Padilla* cannot benefit from its holding. In the instant proceeding, the State has suggested *Padilla* cannot be applied to Mr. Hutton because of *Chaidez*. However, Mr. Hutton has pointed out that his conviction was not final when *Padilla* was handed down because his guilty plea was entered more than a month after *Padilla* was filed on March 31, 2010. Thus, *Chaidez* does not preclude the application of *Padilla* to Mr. Hutton. *See State v. Yuma*, 286 Neb. 244, 249, 835 N.W.2d 679, 683-84 (2013) ("Thus, although Yuma's case was not pending on appeal when *Padilla* was decided, his convictions were not final at the time, and therefore, the new rule announced in *Padilla* applies to him.").

35

559 U.S. at 379-80, 130 S. Ct. at 1489, 176 L. Ed. 2d 284 (Alito, J., concurring).[18]  Justice

Alito argued that there were other ways of addressing the problem,

> such as statutory or administrative reforms requiring trial judges
> to inform a defendant on the record that a guilty plea may carry
> adverse immigration consequences.  As *amici* point out, 28
> states and the District of Columbia have already adopted rules,
> plea forms, or statutes requiring courts to advise criminal
> defendants of the possible immigration consequences of their
> pleas.

*Padilla*, 559 U.S. at 382, 130 S. Ct. at 1491, 176 L. Ed. 2d 284 (Alito, J., concurring).

Justice Scalia, joined by Justice Thomas, dissented from the majority opinion.

The dissent did not believe the Sixth Amendment required defense counsel to inform

defendants of the collateral consequences of being convicted.  Justice Scalia wrote:

> The Court's holding prevents legislation that could solve
> the problems addressed by today's opinions in a more precise
> and targeted fashion.  If the subject had not been
> constitutionalized, legislation could specify which categories of
> misadvice about matters ancillary to the prosecution invalidate
> plea agreements, what collateral consequences counsel must
> bring to a defendant's attention, and what warnings must be
> given.  Moreover, legislation could provide consequences for
> the misadvice, nonadvice, or failure to warn, other than
> nullification of a criminal conviction after the witnesses and

---

[18]The State's brief alleged that Mr. Hutton did not inform his counsel that he
was an immigrant.  Under the current state of the law, this is of no moment.  As noted by
Justice Alito, the decision in *Padilla* did not impose a requirement on the defendant to inform
counsel that he is an immigrant.  While we may agree with Justice Alito that such a burden
should be imposed on a client, *Padilla* has not done so. Consequently, we decline to make
an exception to a federal constitutional right without guidance from federal courts.

evidence needed for retrial have disappeared.

*Padilla*, 559 U.S. at 392, 130 S. Ct. at 1496-97, 176 L. Ed. 2d 284 (Scalia, J., dissenting).

To be clear, *Padilla* imposes on defense counsel a constitutional duty to warn immigrant clients of the legal consequences of a plea conviction. The *Padilla* warning has been summarized as follows:

> The Court expounded on the duties of counsel both where immigration law is and is not clear on the effect of a guilty plea on immigration status. Where the removal consequence is succinct, clear, and explicit, counsel must provide correct advice to the noncitizen. When the law is not succinct or straightforward, a criminal defense attorney only needs to advise the noncitizen that the criminal charges may carry a risk of adverse immigration consequences.

Michael Vomacka, *Supreme Court Decision in Padilla v. Kentucky States Affirmative Duty to Inform Client of Risk Guilty Plea May Result in Removal*, 25 Geo. Immigr. L.J. 233, 234-35 (2010).

Consequently, we now hold that under *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), the Sixth Amendment requires defense counsel to warn an immigrant client of the deportation consequences of a guilty plea. When the deportation consequence is succinct, clear, and explicit under the applicable law, counsel must provide correct advice to the client. When the law is not succinct or straightforward, counsel is required only to advise the client that the criminal charges may carry a risk of

adverse immigration consequences.


**3. Creation of a four-part test for asserting a constitutional legal claim in a petition for a writ of error coram nobis.** The Fourth Circuit has recognized a four-part test for determining when the writ of error coram nobis may be used to remedy a constitutional legal error. This test was set out in *United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012).


The defendant in *Akinsade* was a Nigerian citizen who came to America in 1988, at the age of seven, and resided in Maryland. He became a lawful permanent resident in 2000. In March 2000, the defendant was charged by the federal government with embezzlement from a bank. While considering a plea agreement with the government, the defendant asked his attorney on at least two different occasions about the potential immigration consequences of a guilty plea. On both occasions, his attorney advised him that he could not be deported based on this single offense. His attorney told him that he could be deported only if he had two felony convictions. This advice was inconsistent with the law at that time. Relying on his attorney's advice that he could not be deported for a single offense, the defendant pled guilty. The plea agreement made no mention that deportation was mandatory or even possible. During the plea hearing, the district judge warned the defendant that, if he was not a citizen, he could be deported. After the district court accepted

the plea, the defendant was sentenced to one month of imprisonment to be served in community confinement, and a three-year term of supervised release. Once the defendant served his sentence, he attended the University of Maryland, where he received a bachelor's degree in computer science. He later earned a master's degree from the university and received a fellowship from the National Science Foundation. The defendant later moved to upstate New York.

Almost nine years after the defendant in *Akinsade* was convicted, immigration authorities arrested him and placed him in detention in Batavia, New York. The defendant later was charged with deportation as an aggravated felon based upon the embezzlement conviction. The defendant filed a petition for a writ of error coram nobis in federal court alleging a violation of his Sixth Amendment right to effective assistance of counsel because of the wrong advice given to him by his trial counsel. After conducting a hearing, the district court denied the petition. The court held that although the defense counsel's affirmative misrepresentations rendered his assistance constitutionally deficient, the defendant was not prejudiced because the warning of the potential for deportation during the plea colloquy with the judge cured counsel's affirmative misrepresentations. The defendant appealed to the Fourth Circuit.

The Fourth Circuit noted at the outset in *Akinsade* that precedent by the United

States Supreme Court made it clear that "[a]s a remedy of last resort, the writ of error coram nobis is granted only where an error is of the most fundamental character and there exists no other available remedy." *Akinsade*, 686 F.3d at 252 (internal quotations and citation omitted).  The opinion then set out a four-part test that a petitioner must satisfy to obtain relief in a coram nobis proceeding on a claim of constitutional legal error:

> A petitioner seeking this relief must show that (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character.

*Akinsade*, 686 F.3d at 252 (internal quotations and citation omitted).  The opinion held that the evidence showed that the defendant satisfied each prong of the test and was entitled to coram nobis relief.  It was determined that (1) the defendant could not seek relief under the typical remedies for a direct or collateral attack because he was no longer in custody; (2) until he was physically detained by immigration authorities in 2009, he had no reason to challenge the conviction; and (3) the risk of deportation was a sufficient adverse consequence.  As for the fourth prong of the test, the opinion examined the merits of the defendant's ineffective assistance of counsel claim under the two-part test set out in *Strickland*.  The opinion accepted the district court's finding that trial counsel was deficient, but rejected the district court's determination that the defendant was not prejudiced.  The opinion set out the following factors that may be considered when reviewing a deportation issue:

> Under the prejudice prong of *Strickland,* the potential strength

of the state's case must inform our analysis, inasmuch as a reasonable defendant would surely take it into account. . . . Applying this standard, we have held that counsel's affirmative misadvice on collateral consequences to a guilty plea was prejudicial where the prosecution's evidence proved to be more than enough for a guilty verdict but was hardly invincible on its face. . . . We have further found prejudice where the defendant, whose counsel misinformed him of deportation consequences, had significant familial ties to the United States and thus would reasonably risk going to trial instead of pleading guilty and facing certain deportation.

*Akinsade*, 686 F.3d at 255 (internal quotations and citations omitted). The opinion found that the government's case against the defendant was not sufficiently strong; therefore, it was reasonable to believe the defendant would have risked going to trial rather than pleading guilty and being deported. *See Kovacs v. United States*, 744 F.3d 44 (2d Cir. 2014) (granting coram nobis relief upon finding defendant established counsel was ineffective because he misinformed the defendant about the possibility of deportation); *United States v. Kwan*, 407 F.3d 1005 (9th Cir. 2005) (same), *abrogated by Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010); *United States v. Abou-Khodr*, No. 99-CV-81073, 2013 WL 4670856 (E.D. Mich. Aug. 30, 2013) (same); *Commonwealth v. Mohamed*, 71 Va. Cir. 383 (2006) (same).

We believe that the four-part test set out in *Akinsade* provides a good framework for limiting the use of the writ of error coram nobis to assert a constitutional legal error. Consequently, we now hold that a claim of legal error may be brought in a petition for

41

a writ of error coram nobis only in extraordinary circumstances and if the petitioner shows that (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) there exists a substantial adverse consequence from the conviction; and (4) the error presents a denial of a fundamental constitutional right.

### D. Application of the Test for Raising a Legal Error in a Petition for a Writ of Error Coram Nobis

The last issue presented for our review is the circuit court's determination that even if a claim of ineffective assistance of counsel could be remedied under the writ, the evidence failed to show Mr. Hutton's counsel did not inform him of the deportation consequences of his guilty plea. We decline to address this issue because the circuit court did not have the benefit of the test we have adopted in this opinion for raising a legal error claim in a writ of error coram nobis proceeding.[19] Consequently, we will reverse the circuit court's order and remand this case for that court to apply the test to the facts of this case.[20]

----

[19]We also are concerned that the circuit court's order did not cite to *Padilla* or discuss the stringent constitutional requirements *Padilla* places on defense counsel. On remand, the circuit court will now have the benefit of the guidance set out in *Padilla*.

[20]The circuit court's ruling was based upon trial counsel's affidavit wherein trial counsel indicated that he did not remember if he had advised Mr. Hutton about deportation. In light of the Supreme Court's opinion in *Padilla*, we are doubtful that the attorney's failed memory affidavit is sufficient to reject Mr. Hutton's claim that he was not informed about deportation. *Padilla* would appear to require a definitive statement by counsel that he informed Mr. Hutton of the possibility of deportation. For example, in *Padilla* the Court rejected a contention by the Solicitor General that a defendant should not be allowed to prevail on an ineffective assistance of counsel claim if an attorney remains

(continued...)

On remand, the parties should be permitted to supplement their evidence at a hearing if they choose to do so. To the extent that Mr. Hutton requests the assistance of counsel on remand, the court should appoint counsel.

## IV.

## CONCLUSION

We reverse the circuit court's amended order of April 28, 2014, denying Mr. Hutton's petition for writ of error coram nobis, and remand this case for further proceedings consistent with this opinion.

Reversed and Remanded.

---

[20](...continued)
silent about immigration consequences. The Court held that "[s]ilence under these circumstances would be fundamentally at odds with the critical obligation of counsel to advise the client of the advantages and disadvantages of a plea agreement." *Padilla*, 559 U.S. at 370, 130 S. Ct. at 1484, 176 L. Ed. 2d 284 (internal quotations and citation omitted). In the instant proceeding, the failed memory of Mr. Hutton's trial counsel on this critical constitutional issue is tantamount to silence by counsel. Such silence is unacceptable. *But see State v. Stephens*, 265 P.3d 574, 577 (Kan. 2011), ("[t]he *Padilla* Court did not extend its ruling to obligate defense counsel to correctly predict a client's probation or prison sentence, nor did the *Padilla* Court impose upon counsel the duty to investigate the citizenship or immigration status of every client in every criminal case).