# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Andrew R. Rios,**
**Petitioner Below, Petitioner**

**vs) No. 18-0833** (Ohio County 10-C-32 and 16-C-286)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**December 20, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Andrew R. Rios, pro se, appeals the August 31, 2018, order of the Circuit Court of Ohio County denying his petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex, by counsel Shannon Frederick Kiser, filed a summary response in support of the circuit court's order.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 10, 2008, petitioner entered a plea of guilty in the Circuit Court of Ohio County to first-degree robbery pursuant to a plea agreement with the State after having been charged by information. The State agreed not to pursue a second charge of first-degree robbery for a separate incident occurring on the same night as the robbery at issue. The State further agreed not to seek a gun specification necessary for a sentencing enhancement. Given that there was no such enhancement, petitioner will be eligible for parole after serving fifteen years of incarceration.

During the plea hearing, petitioner admitted that, on the night in question, he (1) picked up an individual named Derek Brown; (2) drove Mr. Brown to a rural part of Ohio County and pulled his vehicle over; (3) discharged a firearm three times (the third shot coming within inches from Mr. Brown's face); and (4) took certain items from Mr. Brown. Petitioner further acknowledged

1

that he understood that he could be sentenced to a term of incarceration of not less than ten years with no upper limit.[1]

On February 22, 2008, the circuit court held a sentencing hearing. In the presentence investigation report, the probation officer recommended that the circuit court forego alternative sentencing for petitioner based on the seriousness of the crime. In accordance with that recommendation, the circuit court declined to consider alternative sentencing, including commitment to the Anthony Center for Youthful Offenders. Also, petitioner, then twenty-one years old, did not request such sentencing alternatives. The circuit court sentenced petitioner to a term of sixty years of incarceration. Subsequently, petitioner filed a motion for reduction of sentence, which the circuit court denied by order entered on January 30, 2009.

Petitioner also appealed his sentence, but this Court refused his appeal by order entered on February 5, 2009. Thereafter, petitioner filed a second motion for reduction of sentence on June 5, 2009. The circuit court did not deny that motion until March 31, 2015. Petitioner appealed the circuit court's order denying the motion for reduction of sentence in *State v. Rios* ("*Rios I*"), No. 15-0347, 2016 WL 2969180 (W. Va. May 20, 2016) (memorandum decision). In *Rios I*, this Court affirmed the circuit court's March 31, 2015, order, finding that there was no abuse of discretion. *Id.* at *2.

Meanwhile, petitioner filed a petition for a writ of habeas corpus, asserting ineffective assistance of trial counsel claims, in the circuit court on January 20, 2010. The circuit court first addressed this habeas petition in an order entered on April 28, 2010, finding that petitioner alleged that trial counsel failed to (1) challenge the statement in the presentence investigation report that petitioner did not fire the third shot just inches from the victim's face; (2) present mitigation evidence at the sentencing hearing; (3) review the presentence investigation report with petitioner; and (4) ask the circuit court to consider petitioner for alternative sentencing, including the commitment to the Anthony Center for Youthful Offenders. The circuit court found that these ineffective assistance of counsel claims, if true, would not have changed the outcome of the sentencing hearing. First, the circuit court explained that the third shot being just inches from the victim's face "did not weigh heavily in the [c]ourt's decision to sentence [p]etitioner to sixty years [of incarceration]"[2] and that rather, "[t]he [c]ourt considered the totality of the circumstances of [petitioner]'s crime[.]" Next, the circuit court rejected the claim that trial counsel deficiently represented petitioner and found that petitioner's assertion that counsel did not review the presentence investigation report with him was "disingenuous" given petitioner's concession that

_____

[1]In *State v. Turley*, 177 W. Va. 69, 71, 350 S.E.2d 696, 698 (1986), we found that West Virginia Code § 61-2-12 "imposes a minimum, but not an expressly stated maximum, sentence of confinement for conviction of this offense," which is now known as first-degree robbery (formerly, aggravated robbery). *See* W. Va. Code § 61-2-12(a).

[2]Petitioner's assertion that the third shot's distance from the victim constituted a disputed fact is contrary to our finding in *Rios I* that petitioner "admitted" at the plea hearing that the shot was just inches from the victim's face. 2016 WL 2969180, at *1.

2

counsel had the report during their meeting prior to sentencing. Finally, the circuit court found that trial counsel's failure to ask for alternative sentencing notwithstanding, the court "consider[ed] whether [petitioner] should be treated under the Youthful Offender statute, but declined to do so pursuant to the presentence investigation report's recommendations." Therefore, the circuit court denied these ineffective assistance claims without a hearing.

The other claim set forth in petitioner's 2010 habeas petition was counsel's alleged failure to appeal the denial of the first motion for reduction of sentence. The circuit court deferred ruling on that issue. On September 19, 2016, petitioner filed a second habeas petition. By order entered on October 13, 2016, the circuit court consolidated the two habeas proceedings. The circuit court found that any failure to appeal the denial of the first motion for reduction of sentence did not cause petitioner prejudice given this Court's affirmation of the denial of the second such motion in *Rios*. The circuit court further found that the ineffective assistance claims raised in petitioner's 2016 habeas petition were the same as the claims previously raised in the 2010 petition. Accordingly, the circuit court reaffirmed its denial of those claims.

As to the remaining claim set forth in petitioner's 2016 habeas petition, the circuit court appointed habeas counsel for petitioner and held a hearing as to the alleged unconstitutional disproportionality of his sentence on June 13, 2018.[3] Thereafter, by order entered on August 31, 2018, the circuit court found that petitioner's sentence was not unconstitutionally disproportionate under either the subjective test set forth in Syllabus Point 5 of *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983),[4] or the objective test set forth in Syllabus Point 5 of *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).[5] Therefore, the circuit court denied petitioner's habeas petition. Petitioner now appeals the circuit court's August 31, 2018, order.

---

[3]Petitioner appeared at the June 13, 2018, hearing by telephone.

[4]In Syllabus Point 5 of *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983), we held:

Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

[5]In Syllabus Point 5 of *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981), we held:

In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

In Syllabus Points 1 and 2 of *Watts v. Ballard*, 238 W. Va. 730, 798 S.E.2d 856 (2017), we held:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

> "West Virginia Code section 53-4A-7(c) (1994) requires a circuit court denying or granting relief in a habeas corpus proceeding to make specific findings of fact and conclusions of law relating to each contention advanced by the petitioner, and to state the grounds upon which the matter was determined." Syl. Pt. 1, *State ex rel. Watson v. Hill*, 200 W. Va. 201, 488 S.E.2d 476 (1997).

On appeal, petitioner argues that the circuit court failed to make findings of fact and conclusions of law for claims other than the alleged disproportionality of his sentence in its August 31, 2018, order. Respondent counters that the circuit court's findings regarding petitioner's other claims were set forth in its April 28, 2010, and October 13, 2016, orders, in which it found that those claims could be denied without a hearing. Based on our review of those orders, we agree with respondent and reject petitioner's argument that the circuit court failed to make findings of fact and conclusions of law as to his other claims.

Petitioner next argues that trial counsel's failure to ask the circuit court to consider petitioner for alternative sentencing constitutes ineffective assistance. We disagree. In Syllabus Point 5 of *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995), we held:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.[6]

(Footnote added). "Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 17, 528 S.E.2d 207, 213 (1999) (citing *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 321, 465 S.E.2d 416, 423 (1995)).

---

[6]The second prong of the *Strickland/Miller* standard is often referred to as the prejudice prong. *See State v. Hutton*, 235 W. Va. 724, 739, 776 S.E.2d 621, 636 (2015).

4

Here, we find that the circuit court rejected this ineffective assistance claim based on petitioner's failure to satisfy his burden regarding the prejudice prong of the *Strickland/Miller* standard. As the circuit court found in its April 28, 2010, order, trial counsel's failure to ask for alternative sentencing notwithstanding, the court "consider[ed] whether [petitioner] should be treated under the Youthful Offender statute, but declined to do so pursuant to the presentence investigation report's recommendations." Based on our review of the record, we concur with the circuit court's determination and find that it properly found that trial counsel was not ineffective.

Finally, petitioner argues that his sentence of sixty years of incarceration was unconstitutionally disproportionate pursuant to the subjective and objective tests set forth in *Cooper* and *Wanstreet*. We disagree and find that, for the reasons given by the circuit court in its October 13, 2016, order, the court properly found that petitioner's sentence was not unconstitutionally disproportionate under either of those tests. Having reviewed the circuit court's October 13, 2016, "Order," we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions. The Clerk is directed to attach a copy of that order to this memorandum decision. Accordingly, we conclude that the circuit court did not abuse its discretion in denying petitioner's habeas petition.

For the foregoing reasons, we affirm the circuit court's August 31, 2018, order denying petitioner's petition for a writ of habeas corpus.

Affirmed.

**ISSUED**: December 20, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

received
9/7/18 8:25

18-0833

McArdle

# IN THE CIRCUIT COURT OF OHIO COUNTY, WEST VIRGINIA

ANDREW W. RIOS,

       Petitioner,

v.                                    Civil Action No. 10-C-32

DAVID BALLARD, Warden,
Mt. Olive Correctional Complex,

       Respondent.

---

ANDREW W. RIOS,

       Petitioner,

v.                                    Civil Action No. 16-C-286

MARVIN C. PLUMLEY, Warden,
Huttonsville Correctional Center,

       Respondent.

# ORDER

Currently pending before the Court is Petitioner's Petition for Writ of Habeas Corpus, and specifically, the argument that Petitioner received a sentence which violates the proportionality principle contained in W. Va. Const. Art. III, § 5.[1]  After considering the only remaining assignment of error, the

---

1 Petitioner previously asserted other assignments of error.  However, these other assignments of error have been ruled upon by the Court.  Therefore, only Petitioner's proportionality argument remains.

–1–

State's response in opposition, the applicable law and the relevant Court files, and after considering the arguments and evidence submitted during the hearing of June 13, 2018, the Court is satisfied that the instant Petition for Writ of Habeas Corpus must be **DENIED**.

## I.
## FACTUAL/PROCEDURAL HISTORY[2]

On November 11, 2007, Mr. Rios was arrested by the Ohio County Sheriff's Department following an incident wherein Mr. Rios fired shots from a gun in and around Derek Brown and robbed him of several personal items. During his plea hearing, Mr. Rios did not dispute the facts and circumstances of this crime as represented by the State of West Virginia. Those facts and circumstances include but are not limited to the fact that during the evening of November 10, 2007, Mr. Rios drove to the Stateline Café, purchased a six pack of beer, returned to his mother's home in Dixon's Run, and consumed it. He returned to the Stateline Cafe and purchased another six-pack of beer, then returned to his mother's home where he consumed all six beers in the second six-pack. At some point thereafter, he decided he wanted to buy crack-cocaine, but did not have the money to do so. He then drove to the Stateline Cafe and attempted to rob the clerk at gun point, but the person working at the Cafe could not gain

---

2 Although the factual history has been detailed in previous Orders of Court, given their import here vis-à-vis Petitioner's assignment of error, the Court has provided a detailed factual history again here.

access to the cash register, so Mr. Rios returned home, only to leave again and travel to East Wheeling with the intention of robbing an individual.

While in East Wheeling, and according to Petitioner, he saw Derek Brown (unknown to Mr. Rios at the time) standing on a street corner. Mr. Brown entered Petitioner's vehicle and Petitioner advised Mr. Brown that Petitioner wanted to buy crack cocaine, but did not have any money to do so. Mr. Brown offered to "front" Petitioner drugs if Petitioner permitted Mr. Brown to use Petitioner's vehicle. Petitioner agreed and advised Mr. Brown that he would drive to his brother's house and wait there while Mr. Brown used the vehicle. At that point, Petitioner drove past his mother's home on Dixon's Run and out to a deserted part of Ohio County where he ordered Mr. Brown out of the vehicle and to lie face-down on the ground. Petitioner fired three gun shots, the last of which passed in close proximity to Mr. Brown's head and was meant to warn Mr. Brown "not to try anything." At that time, he robbed Mr. Brown of a snow hat with a Michael Jordan logo on it and a Carhardt coat. Petitioner returned home and stashed the stolen items under his bed. Petitioner was arrested at his mother's home a short time later.

Andrew Rios was charged, by way of information, with one count of Robbery in the First Degree. On January 10, 2008, Petitioner pled guilty to said charge. Mr. Rios was sentenced to sixty (60) years in the state penitentiary on February 22, 2008 and the Court declined to consider Mr. Rios for alternative sentencing such as at the Anthony Center, which declination was in accordance

–3–

with the recommendation of the pre-sentence investigation report.

During sentencing, the Court noted that Mr. Rios was given leniency when the State of West Virginia declined to charge Mr. Rios with a second count of aggravated robbery and declined to pursue a gun specification. Also during sentencing, the Court noted that it inquired of Petitioner as to whether he had any objections, corrections or clarifications to anything contained in the pre-sentence investigation report, to which Petitioner responded that his only objection was to the recommended sentence in that he felt that it was excessive in light of Petitioner's lack of a prior criminal record, the fact that Petitioner's crime was apparently motivated by his drug addiction, and in light of Petitioner's previous educational history and candidacy for rehabilitation.

Petitioner appealed his sentence to the W.Va. Supreme Court of Appeals, which refused said Petition by order of February 12, 2009. Petitioner next filed a Motion for Modification of Sentence pursuant to R. 35 of the Rules of Criminal Procedure. The Circuit Court denied this Motion in an Order entered January 30, 2009. On or about June 6, 2009, Petitioner filed another Motion for Reduction of Sentence, which was again denied by the Circuit Court. Petitioner appealed said denial to the West Virginia Supreme Court of Appeals. On appeal, Petitioner argued that the Circuit Court erred in denying both of his Motions for Reduction of Sentence because the Circuit Court did not properly consider all appropriate facts and circumstances when making those decisions; the Circuit Court erred when it did not sentence him as a youthful offender; and that

–4–

Petitioner's sentence was excessive. The Supreme Court of Appeals denied

Petitioner's Appeal Petition in a memorandum decision filed May 20, 2016.[3] [4]

## II.
## APPLICABLE LAW

Petitioner has filed the instant Petition pursuant to the authority

contained in West Virginia Code § 53-4A-1, which provides those persons

convicted and incarcerated pursuant to said conviction the ability to file a

Petition for Writ of Habeas Corpus if they believe that:

> there was such a denial or infringement of [their] rights as to render
> the conviction or sentence void under the Constitution of the United
> States or the Constitution of this State, or both, or that the court
> was without jurisdiction to impose the sentence, or that the
> sentence exceeds the maximum authorized by law, or that the
> conviction or sentence is otherwise subject to collateral attack upon
> any ground of alleged error heretofore available under the common
> law or any statutory provision of this State.

Such a person can file a Petition for Writ of Habeas Corpus, and seek

> release from such illegal imprisonment, correction of the sentence,
> the setting aside of the plea, conviction and sentence, or other relief,
> if and only if such contention or contentions and the grounds in fact
> or law relied upon in support thereof have not been previously and
> finally adjudicated or waived in the proceedings which resulted in
> the conviction and sentence, or in a proceeding or proceedings on a
> prior petition or petitions filed under the provisions of this article,
> or in any other proceeding or proceedings which the petitioner has
> instituted to secure relief from such conviction or sentence.

---

[3] Justice Menis Ketchum dissented, noting, among other things, that Petitioner did not have a juvenile record. Petitioner does in fact have a juvenile record which dates back as far as 2000, approximately eight (8) years prior to the incident at issue herein.
[4] The Supreme Court did not consider Petitioner's arguments vis-à-vis the Circuit Court's refusal to sentence him as a youthful offender and whether his sentence is excessive because those issues were not raised by Petitioner in the underlying R. 35(b) Motion.

The contention or contentions raised in the Petition for Writ of Habeas Corpus will be considered waived or previously adjudicated if:

> the petitioner could have advanced, but intelligently and knowingly failed to advance, such contention or contentions and grounds before trial, at trial, or on direct appeal (whether or not said petitioner actually took an appeal), or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or sentence, unless such contention or contentions and grounds are such that, under the Constitution of the United States or the Constitution of this State, they cannot be waived under the circumstances giving rise to the alleged waiver.

If such contention or contentions are considered waived, there is a rebuttable presumption that the petitioner intelligently and knowingly failed to advance such contention or contentions and grounds. *See* W.Va. Code § 53-4A-1.

> A petition seeking a writ of habeas corpus...shall identify the proceedings in which the petitioner was convicted and sentenced, give the date of the entry of the judgment and sentence complained of, specifically set forth the contention or contentions and grounds in fact or law in support thereof upon which the petition is based, and clearly state the relief desired.

W. Va. Code § 53-4A-2.

In the instant matter, and pursuant to the above-noted authorities, Petitioner requests the Court vacate his sentence, impose a sentence which Petitioner believes is more in line with the sentences handed down in similar crimes committed in this region, and accelerate his eligibility for parole.

-6-

## III.
## DISCUSSION

In support of his Petition, Mr. Rios has filed an extensive brief which comprehensively discusses the objective and subjective tests for determining whether a sentence is excessive in violation of the United States and West Virginia Constitutions, and argues that the Court's sentence of sixty (60) years violates the proportionality principle. While the Petitioner's brief seems to be thoroughly researched and is compellingly presented, the Court is nevertheless not persuaded by Petitioner's arguments.

### A. Objective Test

The proportionality principle is set forth by the West Virginia Supreme Court in *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981). As the Court in *Wanstreet, supra* explained,

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

*See Wanstreet, supra* at 524. With respect to the "nature of the offense," Petitioner contends that this offense was committed by a twenty (20) year old adolescent in order to feed his drug addiction. Petitioner maintains that he did not mean to 'do harm,' but rather was motivated by his addiction. Further, Petitioner argues that, although his actions were reckless, irresponsible and dangerous, no one was hurt during the commission of the crime. The Court is

-7-

not persuaded by this argument.

Despite Petitioner's attempts to paint a picture of a young adolescent who made an impulsive decision to commit first degree robbery as a result of the compulsion of his drug addiction, the admitted facts of this case do not bear out this characterization. Rather, the facts and circumstances of Petitioner's crime took place over the course of at least several hours and was premeditated. Petitioner had several opportunities to abort his plan and change course, but he did not. To the contrary, Petitioner persisted until he was able to accomplish what he set out to do: commit first degree robbery.

Further, while it is true there were no physical injuries sustained during the commission of Petitioner's crimes, the lack of a physical injury is not the end of the inquiry as far as the impact of Mr. Rios's actions. The Court notes that Mr. Rios now contests the nature and location of the shots fired. His protestations are of no moment, however. As was noted above, Mr. Rios admitted during his plea hearing that he fired three (3) shots on the night in question: one into the air, one in the vicinity of Mr. Brown and the final shot just inches from Mr. Brown's face. Therefore, and as is clear from the underlying record, the crime for which Mr. Rios has been sentenced was an excessively violent, premeditated one, and one committed after Mr. Rios had made one unsuccessful attempt and redoubled his efforts, including obtaining a firearm.

With respect to 'legislative purpose,' Petitioner argues that, while he is aware of and does not take issue with the legislative intent behind the broad

—8—

discretion afforded to the sentencing court for crimes of first degree robbery, Petitioner nevertheless notes that penal statutes "must be strictly construed against the State and in favor of the defendant." *See* Petitioner's brief at page 5. Petitioner relies upon *State v. Turley,* 177 W.Va. 69, 350 S.E.2d 696 (1986) for the aforementioned edict, and further uses the case to argue that, like Mr. Turley, Mr. Rios could have and should have been sentenced as a youthful offender. However, *State v. Turley, supra* does not necessarily support Petitioner's argument in the instant matter.

In *Turley, supra,* Mr. Turley was indicted on two (2) counts of aggravated robbery. Mr. Turley was eighteen (18) years old at the time of the offenses. Eventually, Mr. Turley pled guilty to one (1) count of aggravated robbery. The Circuit Court sentenced Mr. Turley to the state penitentiary for a determine term of ten (10) years. The Circuit Court further found that, pursuant to W. Va. Code § 25-4-6 [1975], it did not have the authority to suspend Mr. Turley's sentence and commit him to a youthful offender center because, as the Circuit Court apparently believed, aggravated robbery was punishable by life imprisonment. The Supreme Court reversed the Circuit Court and explained that aggravated robbery was <u>not</u> punishable by life imprisonment because it was not expressly provided within the statute. In so finding, the Supreme Court noted that a punishment could not be read into a criminal statute that was not otherwise explicitly provided. In this way, penal statutes are to be strictly construed against the State and in favor of the defendant. *See Turley, supra* at 70-72.

–9–

In the instant case, the issue of Mr. Rios's eligibility for youthful offender commitment does not turn on the Circuit Court's interpretation of the applicable penal statute. Rather, the Circuit Court declined to sentence Mr. Rios as a youthful offender because of the, again, excessively violent nature of his crime, the fact that the same was premeditated, and was completed after he redoubled his efforts following his initial failure. Given the aforementioned, the violent nature of this crime, and the fact that Mr. Rios redoubled his efforts when at first he was not successful in completing a robbery, there were simply no facts upon which the Court could rely to conclude that Mr. Rios would be a good candidate for sentencing as a youthful offender. Notwithstanding this, the Court notes that Petitioner was shown leniency in that the State of West Virginia agreed not to pursue a gun specification for this crime, and Petitioner was not charged with a second count of first degree robbery.

With respect to the need to compare Petitioner's punishment to that inflicted in other jurisdictions as well as our own, Petitioner has identified a myriad of cases and argues that these cases demonstrate his sentence is disproportionate to other sentences handed down for first degree robbery convictions. The Court has thoroughly reviewed and analyzed each of the cases presented by Petitioner. Although at first glance certain of the cases cited appear to be the same or similar to the case at bar, several of them are in fact distinguishable from the instant matter. Indeed, several of the cases cited in Petitioner's brief do not involve the felony charge of robbery in the first degree.

-10-

Rather, robbery in the second degree (*State v. Adkins*) and robbery of a banking institution (*State v. Copley*) are implicated, both of which carry lesser sentencing requirements than the crime for which Petitioner was convicted. For another, a different weapon was used, i.e. a knife (*State v. Horton*). As such, those cases are not persuasive for the Court.

Notwithstanding the above, the Court acknowledges there are several cited cases involving a conviction for first degree robbery by a young person while in possession of a firearm, and several where the firearm was discharged. The Court further acknowledges that, for those cases, the defendants were committed to a youthful offender program. However, without the benefit of a presentence investigation report, the criminal histories of the implicated defendants, and/or the sentencing judge's thought process in sentencing those offenders the way he/she did, this Court is unable to make any meaningful comparison to these cases. Additionally, the Court would reiterate that there were simply no facts upon which the Court could have had relied to conclude that Mr. Rios was a good candidate for alternative sentencing. This crime was, again, premeditated, excessively violent in nature, and was committed despite a failed first attempt.

**B. Subjective Test**

Petitioner also addresses the "subjective test" set forth in *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983), which is as follows:

Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the

–11–

crime for which it is inflicted that it shocks the conscience and offends the fundamental notions of human dignity, thereby violating West Virginia Constitution, Article II, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

*See* syl. pt. 5, *Cooper, supra.* Petitioner contends that his sentence shocks the conscience and offends the fundamental notions of human dignity because, at the time of the crime, Mr. Rios was only twenty (20) years old, no one was hurt during the commission of the crime, Petitioner was remorseful as reflected during his allocution to the Sentencing Court, and because he had no prior criminal record. The Court is not persuaded by these arguments.

As was explained above, although Mr. Rios was twenty (20) years old at the time of this crime, his age does not minimize the excessively violent nature of the offense. Further, the record is replete with evidence of the many opportunities Mr. Rios was afforded to overcome his addiction to drugs and turn his life around before he committed the crime for which he is now incarcerated. While the Court is sympathetic to the unique pain and the challenges of dealing with a drug addiction, it nevertheless cannot be said that Mr. Rios was unaware of the dangers his lifestyle, i.e. incarceration, in and around the time of this crime.

Petitioner further argues that, because no one was physically injured during the commission of this crime, and because Mr. Brown did not provide a victim impact statement, Petitioner's sentence is not warranted. The Court is not persuaded by these arguments. Again, this crime was an excessively violent

–12–

one, and one where Mr. Rios persisted until he committed the crime of first degree robbery. It occurred over the course of several hours where Mr. Rios, after having been thwarted the first time, returned to his mother's home to retrieve a firearm before attempting to commit the crime a second time. Additionally, the fact that Mr. Brown did not file a victim impact statement does not diminish the seriousness or severity of the crime. The Court cannot and will not speculate on Mr. Brown's motives for not providing a victim impact statement, or on the impact this crime actually had upon Mr. Brown.

Petitioner next points out that Petitioner showed remorse during his allocution. The Court commends Petitioner for accepting responsibility for his actions. However, this action of accepting responsibility does not support a lesser or alternative sentence for Petitioner in light of the facts and circumstances surrounding the crime for which Petitioner has been convicted.

Petitioner also points out that, at the time of his conviction, he had no prior criminal record. While this is true, it nevertheless does not negate the serious, excessively violent nature of the crime for which Mr. Rios has been convicted.

Finally, and despite Petitioner's arguments, the Court is satisfied that the events which led to Petitioner's conviction do not constitute a mere "lapse in judgment." Such a characterization implies that the events happened quickly, were short-lived, and were largely out of Petitioner's control. That is not the case here. As the Court has explained, Petitioner did not simply commit this

–13–

crime on a spur of the moment impulse. Rather, the events which led to Petitioner's conviction occurred over the course of an extended period of time during which Petitioner consumed a large quantity of alcohol, plotted and intended to commit first degree robbery, persisting until he was successful. Petitioner had multiple opportunities to abort his plan. Unfortunately, he did not.

## IV.
## CONCLUSION

Accordingly, and for all of the foregoing reasons, the Court hereby **FINDS** Petitioner's Petition for Writ of Habeas Corpus should be and is hereby **DENIED**.[5] The Clerk is instructed to remove this case from the Court's active docket.

It is so **ORDERED.**

It is further **ORDERED** that the Circuit Clerk provide attested copies of this order upon entry to Elgine McArdle, Esq., McArdle Law Office, 2139 Market Street, Wheeling, WV 26003; Scott Smith, Esq., 1500 Chapline Street, 2nd Floor, Wheeling, WV 26003.

---

[5] Notwithstanding the Court's denial of Petitioner's Habeas Corpus Petition, the Court recognizes the effort Petitioner has clearly expended toward rehabilitating himself while incarcerated. The Court commends Petitioner for his efforts and the progress Petitioner has clearly made while serving his sentence, and would encourage him to persist in this positive direction.

**ENTERED** this __31ˢᵗ__ day of August, 2018.

JAMES P. MAZZONE, JUDGE

A copy, Teste:

Brenda L. Miller
Circuit Clerk