# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Richard Kartman,**
**Petitioner Below, Petitioner**

**vs.) No. 19-0307** (Ohio County 09-C-403)

**J.T. Binion, Superintendent, Huttonsville**
**Correctional Center,**
**Respondent Below, Respondent**

**FILED**
**April 28, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Richard Kartman, self-represented litigant, appeals the March 6, 2019, order of the Circuit Court of Ohio County denying his second amended petition for a writ of habeas corpus. Respondent J.T. Binion, Superintendent, Huttonsville Correctional Center, by counsel Andrea Nease Proper, filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2008, petitioner was indicted in the Circuit Court of Ohio County on two felony charges, first-degree robbery and being a person prohibited from possessing a firearm due to a prior felony conviction, and on the misdemeanor charge of being a person prohibited from possessing a firearm due to drug addiction. Trial was set for May 2, 2008.

On April 29, 2008, petitioner's court-appointed trial counsel, Attorney Randy Gossett, filed a motion to withdraw, stating that the attorney-client relationship was "destroyed and irreparable." The circuit court continued an April 30, 2008, hearing on the motion after Attorney Gossett could not appear due to illness. At a May 1, 2008, hearing on the motion, Attorney Gossett stated that the "biggest problem" was "a total breakdown in communication." The circuit court did not allow

1

Attorney Gossett to withdraw, but appointed Attorney Michael Olejasz as co-counsel to allow for "more coherent" communication. At a May 8, 2008, hearing, Attorney Gossett withdrew his motion to withdraw, informing the circuit court that Attorney Olejasz would be assisting in the case. The circuit court rescheduled petitioner's trial for May 19, 2008. At a May 16, 2008, hearing, the circuit court granted petitioner's motion to bifurcate the trial so that petitioner would be tried solely on the first-degree robbery charge, but denied a further continuance of the trial.

On May 19, 2008, the circuit court conducted voir dire and impaneled a jury. Outside of the jury's presence, the State objected to petitioner's disclosure of four witnesses who would testify that a person named "Cash" subjected petitioner to duress to cause him to commit the robbery. Attorney Gossett responded that petitioner was "hoping that these people will come forward" because they would be able to substantiate petitioner's theory that he committed the robbery under duress. Attorney Gossett made a proffer that these witnesses would testify that "Cash" was a drug dealer who was known to frequent petitioner's apartment, to carry guns, and to rob other drug dealers. The circuit court ruled that petitioner could testify that "Cash" subjected him to duress if a proper foundation was laid, but that any other witnesses would not be permitted to do so.

The State requested that the circuit court rule that petitioner was not permitted to question the victim, Maria Cunningham, regarding a prior felony conviction Ms. Cunningham had for a federal drug offense. The circuit court ruled that petitioner was permitted to ask Ms. Cunningham about her prior felony drug conviction pursuant to Rule 609(a)(2)(A) of the West Virginia Rules of Evidence. After these rulings, Attorney Gossett requested a recess so that he and Attorney Olejasz could discuss the same with petitioner.

After the recess, the parties informed the circuit court that they had reached a plea agreement, where petitioner would enter an *Alford/Kennedy* plea to first-degree robbery in exchange for the dismissal of the other charges.[1] The parties further agreed that petitioner would be incarcerated for sixty years, but would be eligible for parole in fifteen years instead of twenty years because there would be no reference to the possession of a firearm. At the beginning of the plea colloquy, petitioner testified that he was going to enter an *Alford/Kennedy* plea given the circuit court's ruling as to the admissibility of the testimony of petitioner's trial witnesses and that he was going to "take" the sentence with the earlier parole eligibility. The circuit court subsequently questioned petitioner about Attorney Gossett's previous request to withdraw from the case:

> Q. . . . Now, you've been represented in this case by [Attorney] Gossett and [Attorney] Olejasz. You know and I know we've had some discussion regarding [Attorney] Gossett. He wanted at one time to withdraw. I kind of split the baby and

---

[1]Relying on *North Carolina v. Alford*, 400 U.S. 25 (1970), this Court held in Syllabus Point 1 of *Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43 (1987), that "[a]n accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him."

2

said: Don't do that. I denied the motion, and I appointed [Attorney] Olejasz to work with [Attorney] Gossett. How has that worked out for you?

A.     Well, the problem we had with [Attorney] Gossett was that I didn't feel that things were coming along as they should. There was—I know that the time I was facing here was great and un—you know, I just—I don't believe that there's enough time, but . . . .

Q.     I'm not talking about now. You got two—what I consider to be two good lawyers—

A.     I'm thinking—I'm taking the plea today because where we're at, and I think it's the smart thing to do; they've both advised me of it. They've advised me of the case and what I have to go against. So[,] . . . .

Q.     And[,] you're willing to go through with it?

A.     Yes.

*Q.     I've already gone over with you that you don't have to do this, and we've already discussed that?*

*A.     Yes, Judge.*

(Emphasis added.).

The State provided the evidentiary basis for the guilty plea. The State proffered that on January 6, 2008, a loud bang woke Ms. Cunningham while she was sleeping in her apartment. Ms. Cunningham observed petitioner with a firearm inside her apartment. Petitioner told Ms. Cunningham to lay on the ground and to "give me your shit." Ms. Cunningham took a shoebox which was sitting next to her and threw it at petitioner, and petitioner left Ms. Cunningham's apartment without actually taking anything.[2]

Later in the hearing Attorney Olejasz stopped the proceeding, informing the circuit court that "I believe [petitioner] has changed his mind." A discussion was held off the record. When the

---

[2]West Virginia Code § 61-2-12(a) provides:

(a) Any person who commits or attempts to commit robbery by:

(1) Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years.

proceeding resumed, the circuit court inquired of Attorney Olejasz, "Anything?" Attorney Olejasz answered, "No, Your Honor." Accordingly, the circuit court proceeded with the plea hearing. The circuit court accepted petitioner's *Alford/Kennedy* plea, sentenced him to sixty years of incarceration for first-degree robbery, and dismissed the other charges at the State's request. In *State v. Kartman*, No. 11-0042 (W. Va. May 16, 2011) (memorandum decision), this Court considered the sentence of sixty years of incarceration stemming from petitioner's conviction for first-degree robbery and affirmed the circuit court's judgment, finding that the sentence was not excessive.

On November 20, 2009, petitioner filed a petition for a writ of habeas corpus. Petitioner's first habeas counsel withdrew from the case "due to a breakdown in communications." Petitioner requested the removal of his next habeas counsel and asked that he be allowed to represent himself. The circuit court granted petitioner's requests on November 21, 2014. On May 22, 2015, petitioner filed a motion for appointment of counsel. By order entered on October 26, 2015, the circuit court appointed habeas counsel who filed the second amended habeas petition accompanied by a verification from petitioner on August 21, 2017. The circuit court held an omnibus hearing on the second amended habeas petition on February 2, 2018. At the omnibus hearing, petitioner testified on his own behalf and presented the testimony of Attorney Gossett, Attorney Olejasz, and a person who stated that she was unable to contact trial counsel with information helpful to petitioner's defense. Respondent cross-examined petitioner and the other witnesses. By order entered on March 6, 2019, the circuit court denied the second amended habeas petition. It is from the circuit court's March 6, 2019, order that petitioner now appeals.

This Court reviews circuit court orders denying habeas relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016); *see also* Syl. Pt. 1, *State ex rel. Postelwaite v. Bechtold*, 158 W. Va. 479, 212 S.E.2d 69 (1975) (holding that "[f]indings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong").

On appeal, petitioner challenges the circuit court's denial of three of his claims of ineffective assistance of trial counsel. Respondent counters that the circuit court properly denied the second amended habeas petition. We agree with respondent.

We review ineffective assistance claims as follows:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*,

4

466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.[3]

Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) (Footnote added.). Furthermore,

> [i]n reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. Pt. 6, *id.* at 6-7, 459 S.E.2d at 117-18.

Petitioner first argues that the circuit court erred in finding that Attorney Gossett would have impeached Ms. Cunningham's testimony, notwithstanding her prior history of being a State's witness, and that Attorney Gossett and Attorney Olejasz conducted an adequate investigation. At the omnibus hearing, Attorney Gossett testified that when he was an assistant prosecutor from 1994 to 2000, there was one instance when he located Ms. Cunningham and had her come to court to be a witness for another assistant prosecutor. Attorney Gossett stated that "it wasn't my case" and that he would impeach Ms. Cunningham's testimony at petitioner's trial. The impeachment of Ms. Cunningham was also raised at trial when the circuit court ruled that she could be questioned about her prior felony drug conviction.

Attorney Gossett testified that he attempted to find the people on petitioner's witness list, but did not subpoena anyone for trial because he "couldn't find any of these people." Attorney Gossett explained that "nobody let me in" when he knocked on their doors. Attorney Gossett further testified that he had conversations with the drug taskforce personnel working in the area of the robbery and discussed with petitioner that the involvement of the drug taskforce could aid his defense.

Attorney Olejasz testified that he conducted legal research into petitioner's case and that he and Attorney Gossett twice went to the convenience store near Ms. Cunningham's apartment to speak to the person who allegedly saw petitioner going to and coming from the apartment. Attorney Olejasz further testified that the State produced a CD of Ms. Cunningham's 911 call in discovery.

Petitioner now contends that his trial counsel's testimony is contradicted by the allegations set forth in his second amended verified petition. "An appellate court may not decide the credibility

---

[3]The second prong of the *Strickland/Miller* standard is often referred to as the prejudice prong. *See State v. Hutton*, 235 W. Va. 724, 739, 776 S.E.2d 621, 636 (2015).

of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995). With regard to habeas proceedings, we have stated that "[i]n cases where there is a conflict of evidence between defense counsel and the defendant, the circuit court's findings will usually be upheld." *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 327, 465 S.E.2d 416, 429 (1995). Based on our review of the record, particularly the omnibus hearing transcript and the second amended verified petition, we conclude that the circuit court did not commit clear error in finding that Attorney Gossett was willing to impeach Ms. Cunningham's testimony and that Attorney Gossett and Attorney Olejasz conducted an adequate investigation of the claims against petitioner.

Next, petitioner argues that Attorney Gossett had an actual conflict of interest. Petitioner contends that if a conflict of interest actually affects the adequacy of representation, there is no need to demonstrate prejudice in order to obtain habeas relief pursuant to *Culyer v. Sullivan*, 446 U.S. 335, 349 (1980). In this regard,

> [t]he *Strickland* Court recognized that a claim of ineffective assistance of counsel arising from counsel's conflict of interest presents a special case subject to the standard articulated by [*Sullivan*]. . . . To establish ineffective assistance of counsel on conflict of interest grounds, a petitioner must establish that (1) his attorney labored under "an actual conflict of interest" that (2) "adversely affected his lawyer's performance." *See Sullivan*, 446 U.S. at 348. After a petitioner satisfies this two-part test, prejudice is presumed. *Sullivan*, 446 U.S. at 349. . . .

*Mickens v. Taylor*, 240 F.3d 348, 355 (4th Cir. 2001), *aff'd*, 535 U.S. 162 (2002).

Here, petitioner suggests that Attorney Gossett had an actual conflict of interest because (1) Ms. Cunningham worked as a confidential informant, whose credibility Attorney Gossett was unwilling to impeach given his prior employment as an assistant prosecutor; and (2) Attorney Gossett told petitioner that he thought petitioner was guilty. As discussed above, Attorney Gossett testified that his only involvement as an assistant prosecutor with Ms. Cunningham was locating her and having her to come to court to be a witness for a prosecution that "wasn't my case." Attorney Gossett further testified that he had no recollection of telling petitioner he believed that petitioner was guilty. Pursuant to *Guthrie* and *Legursky*, the circuit court, which had the opportunity to observe the demeanor of both Attorney Gossett and petitioner at the omnibus hearing, had the responsibility of weighing the evidence. Therefore, we conclude that the circuit court's finding that there was no evidence of an actual conflict was supported by the record and not clearly erroneous.

Finally, petitioner argues that he was functionally denied assistance of counsel given Attorney Gossett's statement, in his pretrial motion to withdraw, that the attorney-client relationship was "destroyed and irreparable," and, therefore, prejudice is presumed pursuant to *United States v. Cronic*, 466 U.S. 648 (1984). The United States Supreme Court has said that prejudice may be presumed in certain very narrow circumstances, such as where the deprivation of counsel is obvious and egregious. *See Bell v. Cone*, 535 U.S. 685, 695 (2002) (citing *Cronic*, 466 U.S. at 658-59). The Supreme Court identified three such circumstances: (1) "complete denial

of counsel" at "a critical stage"; (2) constructive denial of counsel where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) instances where "counsel is called upon to render assistance under circumstances where competent counsel very likely could not." *Bell*, 535 U.S. at 695-96.

Here, petitioner's trial counsel were not called upon to render assistance in any circumstance where they likely could not do so. With regard to the other two situations identified in *Bell*, petitioner initially argues that there was a complete denial of counsel at the May 1, 2008, hearing on the motion to withdraw because Attorney Gossett failed to adequately inform the circuit court of the difficulties between petitioner and counsel. Based on our review of the hearing transcript, we find that Attorney Gossett stated that he was limiting his comments to the court due to the attorney-client privilege. Moreover, petitioner's alleged reasons to mistrust Attorney Gossett are contradicted by the record. As found by the circuit court, Attorney Gossett did not have any conflict of interest that adversely affected his representation of petitioner. While petitioner contends that the "sham" duress defense was foisted on him—which would have caused him to perjure himself by admitting to a robbery that he did not commit—Attorney Gossett and Attorney Olejasz testified that petitioner suggested that the duress defense be used given his version of the facts. Therefore, we find that petitioner's arguments that there was a complete denial of counsel are not supported by the record.

Petitioner further argues that there was a constructive denial of counsel because Attorney Gossett and Attorney Olejasz coerced him into pleading guilty during the recess following the circuit court's evidentiary rulings. Petitioner argues that this coercion occurred during a meeting in the courthouse restroom initially involving petitioner and Attorney Olejasz, and then also involving Attorney Gossett and the prosecutor. Attorney Olejasz specifically testified that no such meeting took place in the courthouse restroom. The May 19, 2008, trial transcript reflects that petitioner decided to enter an *Alford/Kennedy* plea following the circuit court's evidentiary rulings because he wanted to "take" the sentence with the earlier parole eligibility. The transcript further reflects that petitioner was informed that "you don't have to do this" and that the proceeding was stopped and an off-the-record discussion held when it was believed that petitioner may have changed his mind about pleading guilty. Therefore, we find that there was no constructive denial of counsel and that the circuit court properly rejected petitioner's claims alleging ineffective assistance of counsel. We conclude that the circuit court did not abuse its discretion in denying the second amended habeas petition.

For the foregoing reasons, we affirm the circuit court's March 6, 2019, order denying petitioner's second amended petition for a writ of habeas corpus.

Affirmed.

**ISSUED**:   April 28, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

8